### JOSEPH BRADFORD v. WILLIAM G. PECKHAM and another.

An order of injunction until a certain day, or until further order of the court, does not expire on that day, unless some further order is made, but continues in force, under the rules of the court, until an order is made dissolving it.

Where a complainant in a bill in equity excepted to the answer, and contended that his exception should be decided, and that he was entitled to a full answer, before a hearing on the motion to dissolve an injunction, *Held*, that ordinarily, on the coming in of the answer denying the equities of law, an injunction is to be dissolved, but not necessarily or of course.

On a hearing of a motion to dissolve an injunction, the answer is considered as an affidavit, and the complainant may use counter affidavits, or his exceptions, in argument as to the insufficiency of the answer.

The English *common* injunction, which was granted as of course, on certain defaults of the respondent, and a *special* injunction granted on special applica. tion and oath, distinguished.

A good will held to be the probability that the old customers will continue to come to the old place, but ordinarily, the good will of the business as the vendor used it, and only coextensive with the business car ried on. *Semble*, that a person selling a good will is not prevented from leasing other property he may own in the neighborhood to another person who may carry on the same business, provided there is no collusion, and the lessor has no interest in the business.

BILL in equity, to enjoin the respondents from carrying on the coal business on certain wharves in the city of Newport. The cause was now heard upon a motion to dissolve a preliminary injunction heretofore granted ; and the facts of the case, as shown by bill, answer and affidavits, are sufficiently stated in the opinion of the court.

*F. B. Peckham, Jr., and White, for the complainant.*

*Sheffield and Gilpin, for the respondents.*

POTTER, J. In this case, a temporary injunction restraining the respondents from unloading coal, &c., on Scott's and Commercial wharves, in Newport, was granted on the second day of August, 1869, served the next day, and the hearing has since been several times adjourned by consent.

The respondents contend, that as the injunction was until a certain day, or until further order, and as no order was made on that day, the injunction has expired, and is not now in force. We think that, under the rules, the injunction continues in force until dissolved; and a motion is now made to dissolve it. Since the injunction was granted, the respondents have answered, and the complainant has excepted to both answers for impertinence and insufficiency; and the complainant contends, that the exceptions should be first heard and decided; and that if the answer should be held to be insufficient, he is entitled to a full answer before a hearing on the motion to dissolve. This might be a good ground if, on the coming in of the answer denying the bill, the injunction was to be dissolved of course. Ordinarily, on the coming in of the answer denying all the equities of the bill, the injunction is to be dissolved, but not necessarily, or of course. For the purposes of this motion, the answer is considered as merely an affidavit, and the complainant may, in proper cases, offer counter affidavits; and he may also, by his exceptions, or verbally, argue as to the insufficiency of the answer, and both the answer and exceptions must be considered, as far as is necessary, to decide the question of continuing the injunction.

The apparent conflict of practice as to dissolving injunctions on filing an answer, arises, we think, from not distinguishing between the English *common* injunction, which was granted of course on certain defaults of the respondent, and a *special* injunction, (like the present,) granted on special application and oath. *Poor v. Carleton,* 3 Sumner, 73.

The lease now held by the complainant was originally made in 1862, to Pitman & Peckham, for five years,—rent $550,—and was in 1864 renewed for five years, ending 1872, at an increased rent for the eight years of $600. Pitman assigned his interest to J. O. Peckham, and on February 9th, 1869, J. O. Peckham assigned to the complainant. The lease conveyed to Pitman & Peckham, " for the purpose of their carrying on the wood and coal business thereon, Commercial and Scott's wharves, * * * together with the office now occupied by said party of the first

part, the barn, scales, coal sheds, and one long, red building, extending part way down the centre of said Commercial wharf, of this lease upon said premises. Reserving, however, from the operation all the buildings and improvements on said premises, and all rights and privileges to said premises belonging or apper-taining, excepting only such rights and privileges as are naturally and properly connected with or are necessary to the aforesaid wood and coal business."

We have a right to read this lease in the light of the circum-stances surrounding it at the time it was made. The bill states that said W G. Peckham had himself carried on the wood and coal business on said premises; that it was a long established stand for that kind of business, and that said Pitman & Peckham bought of W. G. Peckham the good will of his said business, he then retiring. The answer of W. G. Peckham admits that said W. G. Peckham had carried on said business on a part of the premises known as the Commercial wharf coal and wood yard, and that he sold the stock in trade and good will of said yard to said Pitman & Peckham, and that the remainder of said wharves were devoted to other purposes and to similar uses by other persons. W. G. Peckham, occupying certain buildings and certain portions only of the wharves for coal business, leases the wharves, specifying these buildings, and specially reserving other buildings and rights to Pitman & Peckham for the purpose of carrying on *the coal business*, and sells him the good will of the business. Read in the light of this evidence, we think a reason-able construction is that it was to carry on the coal business, not exclusively of others, as he, W. G. Peckham, had carried it on ; and this construction is confirmed by the sale of the good will, which, it is agreed, was a part of the bargain.

A good will is defined by Lord Eldon to be the probability that the old customers will continue to come to the old place. There is sometimes a right to continue a name, &c., or a recom-mendation ; but the good will is the good will of the business as the vendor used it, and is only co-extensive with the business carried on. And this part of the bargain being by the bill and answer reduced to writing, may properly be used in deciding on

the present motion. Nor can we find any decided case where a person who sells a good will is prevented from leasing other property he may own in the neighborhood to another person who may carry on the same business, provided there is no collusion, and the lessor has no interest in the business. Lord Eldon, in *Crutwell* v. *Lye*, 17 Vesey, 347; *Shackle* v. *Baker*, 14 Vesey, 468; *Harrison* v. *Gardner*, 2 Mad. 420, (Am. ed. 455); Fry on Spec. Perf. § 42. So also in the case of John O. Peckham's sale of the good will of his business, the same remark applies that it could only extend to the business he actually carried on.

Thus far, we have resorted to extrinsic evidence only, for the purpose of showing the circumstances under which the law was made, and not for the purpose of varying or contradicting it, or of showing the intention of the parties, otherwise than by the lease itself and the attending circumstances. It is plain, from the affidavits, that the business carried on, part by J. O. Peckham and Pitman, and afterwards by J. O. Peckham alone, corresponded to this construction of the lease. And there is other evidence which, without recapitulating it, we think seriously affects the equity of the complainant to a continuance of the injunction. It may be alluded to here as tending to show, that even if the construction of the lease be as the complainant contends, he purchasing with a full knowledge of the claims of the other party to a different construction and of the practice under it, has no particular equity on his side to a continuance of the injunction. An order will therefore be made dissolving the injunction.

A motion is also made that the respondents be committed for contempt in disobeying the injunction. Ordinarily, a party in contempt must first purge himself of the contempt before he can be allowed to proceed in a cause, but in the present instance, the court have preferred not to adhere to the ordinary rule, but to hear and decide both motions together.

An injunction, when brought to the knowledge of a party by service or otherwise, should be promptly obeyed. But there is no evidence against Peckham; and the other respondent, Greene,

alleges, that he did not know the nature of the process, and that he stopped the unloading of the coal as soon as he could take the advice of counsel. We think the law will be sufficiently vindicated if he is required to pay the costs of the motions for the injunction and its dissolution, and of the motion for commitment.

In giving this opinion, it is of course understood that it is formed upon the papers and evidence as now exhibited, and allowing them the weight to which they are entitled in the consideration of this particular question; and that it is not intended to preclude a full consideration of the merits of the case.

*Injunction dissolved.*