[Civ. No. 5998. First Appellate District, Division One.—December 21, 1928.]

In the Matter of the Guardianship of ANDREW CASSIDY, an Incompetent Person. HELEN LERIGER, Respondent, v. ANDREW CASSIDY, Appellant.

James F. Sheehan for Appellant.

Jordan L. Martinelli for Respondent.

BARNARD, J., *pro tem.*—This is an appeal from an order appointing Helen Leriger as guardian of the person and estate of her stepfather, Andrew Cassidy. The petition of the respondent stepdaughter seeks the appointment of herself as guardian of the persons and estates of both her mother, Catherine Cassidy, and her stepfather, Andrew Cassidy, who are husband and wife, and each alleged to be seventy-three years of age. The petition alleges, "That both said Andrew Cassidy and Catherine Cassidy, his wife, *by reason of old age and weakness of mind* are and each is unable, unassisted, to properly manage and take care of himself or herself and of their respective property, and by

reason thereof they are each likely to be deceived or imposed upon by artful or designing persons.'' (Italics ours.) In his answer the appellant denies all the allegations of the petition going to show the necessity for the appointment of a guardian, and in addition requests the court, in the event a guardian is held to be necessary, to appoint the Crocker First Federal Trust Company of San Francisco as such guardian, in lieu of respondent. Respondent was appointed guardian of the persons and estates of both Andrew Cassidy and Catherine Cassidy, but Andrew Cassidy alone appeals.

The trial court, among other things, found ''that all of the allegations contained in the petition are true,'' and further, ''that Andrew Cassidy is seventy-three years of age . . . and that by reason of old age and weakness of mind said Andrew Cassidy is unable unassisted to properly manage and take care of himself and/or his property and estate, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons.'' Three points are raised by the appellant as reasons why the order complained of should be reversed.

The first point urged is that, upon the petition as filed, the court had no jurisdiction to hear or determine the matter or appoint a guardian, for the reason that the petition absolutely fails to allege or ''represent'' to the court that Andrew Cassidy was ''insane, or from any cause *mentally incompetent* to manage his property'' as required by section 1763 of the Code of Civil Procedure, nor does it state facts fully equivalent to the words ''mentally incompetent'' required by said section.

While it must be represented to the court that such a mental condition as is described in section 1763 of the Code of Civil Procedure exists in the person for whom guardianship is sought, the specific language used in that section is not essential. That section is to be considered in connection with sections 1764 and 1767 of the same code. Section 1764 of this code provides that a guardian shall be appointed when it appears to the court that the person in question ''is incapable of taking care of himself and managing his property.'' And section 1767 furnishes a definition of the terms used in sections 1763 and 1764 and involved in this proceeding. These two sections, in effect, provide a test by which the condition of the alleged incompetent is to be

measured. This test is, whether or not he "is, by reason of old age, disease, weakness of mind, or from any other cause unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

While the petition in this case does not allege the mental incompetency of appellant in the exact words of section 1763 of the code, the language of the petition and of the order appealed from is almost identical with the definition of these words furnished by section 1767. It would seem reasonable that no stronger language is requisite in the petition for appointment of a guardian than is sufficient in the order appointing such a guardian. This appointment is provided for in section 1764 of the Code of Civil Procedure, which is partially quoted above. And the kind of "incapability" referred to in this section is defined in section 1767. The petition herein uses, in this respect, practically the language of sections 1764 and 1767 of this code. As was said by the supreme court of Michigan, in *Re Storick*, 64 Mich. 685 [31 N. W. 582], and referred to in *In re Coburn*, 11 Cal. App. 604, at 608 [105 Pac. 924], "The statute does not say merely 'incompetent' but 'mentally incompetent.' . . . Unless the petition either follows the words of the statute, *or uses language and states facts fully equivalent,* it cannot give jurisdiction." (Italics ours.) In our opinion, the petition herein does use language and states facts fully equivalent to the words of the statute, and the mental incompetency to manage property required by section 1763 of the Code of Civil Procedure is sufficiently alleged to give the court jurisdiction of the proceedings.

In his second contention, the appellant claims the evidence is not sufficient to support the findings of the court which are hereinabove quoted. The claim is that the evidence is not sufficient to show that appellant is, by reason of mental weakness, incompetent to care for himself or his property. Among other things, there is evidence as follows: that appellant has about $7,000 in the bank, and also owns jointly with his wife a home worth $3,500 or thereabouts, a lot and barn in San Francisco, value not shown, and a promissory note for $3,000. That he was at the time of the hearing seventy-three years old, and at that time had been ill and

confined in a hospital for about four months. That he had periods of crying when there was no apparent occasion, and would cry on being asked a question; that on one day he would offer to sell his home for $1,400, and send people to look at it, and the next day would change the price to $4,500; that he was constantly talking of going into different lines of business, first the trucking business, and soon thereafter the business of building and selling cheap houses, stating that he was just as good a carpenter as men in the business who had learned the trade, and next he would plan to get a job in the Crocker Bank; that he was constantly planning to get into some business and get someone to go into partnership with him; that he had a loan of $3,000, and insisted he was to receive only $210 interest thereon for three years, instead of $210 a year, and was unable to understand the difference when it was explained to him; that in making a loan he gave a check for $3,000 to a stranger before receiving any papers; that many people were trying to get loans from him; that he was unable to understand certain ordinary transactions with a bank; that more recently he could not carry on a complete or connected conversation. Appellant himself testified: "Q. If someone told you you could make double your money by building houses and selling them, would you do that? A. Of course I would, you would, too. Q. Have you had any experience in building houses, Mr. Cassidy? A. Not a bit, not a bit."

 In cases of this kind it is not necessary to wait until actual loss or damage has been suffered before the beneficent provisions of these statutes may be invoked. It is sufficient when the mental weakness exists, which makes the unfortunate one an easy prey for the designing. The willingness of appellant to accept the statement of other and perhaps interested parties and rely on their promises of big money in the building business, in which he was not experienced, was, in his apparent condition, a dangerous symptom, and this alone, but especially in the light of the other testimony, may well have convinced the trial court that appellant would be easily imposed upon by artful and designing persons. The trial court had, in addition to the other testimony, the opportunity of hearing and observing the appellant. Without quoting more of the testimony, the above facts are sufficient to show there was evidence to sup-

port the findings of the court, and the well-known rule applies.

■ As a third ground for reversal, appellant claims the appointment of the stepdaughter was erroneous, for the reason that respondent is disqualified, since she is also the guardian of the estate of her mother, the wife of appellant; that her interests would thus be conflicting, and that she is not a relative or friend of appellant, but is actually hostile to him. Respondent is under no statutory disability or disqualification to act as such guardian. ■ The court has a broad discretion in the appointment of a guardian. (*In re Crocker*, 174 Cal. 660 [163 Pac. 1015].) ■ There is nothing in the record to show any such conflict of interest as would disqualify her, and the court may well have considered it as an advantage that she was also the guardian of the estate of her mother, wife of appellant, in view of the joint ownership of some of the properties and the economy and convenience of having the interests of both handled by the same person. The evidence shows respondent is a proper person to act as guardian, that she is familiar with the affairs of respondent and his wife, and is possessed of ordinary business ability.

It is urged that respondent, being a stepdaughter, is not a "relative," and that she has shown such hostility toward appellant as precludes her from being considered a "friend" to him and, therefore, under section 1763 of the Code of Civil Procedure, she could not file a petition. While she is not a blood relative, the section itself does not specify a blood relative, and it might well be held that this fairly common relationship was within the purpose and intent of the statute. Whether or not this is true, we think the evidence shows that she at least is such a friend as is contemplated by the section. Without quoting the scattered testimony on this point, we may say that it shows no hostility on the part of respondent toward appellant, and any slight conflict in the evidence, as to friendliness, has been resolved by the trial court in favor of the respondent.

■ In connection with the matters just referred to, it is finally urged by appellant that, if a guardian is needed at all, the trial court should be required to appoint as guardian either the nominee of appellant, the Crocker First Federal Trust Company, or some competent person other than re-

spondent. This is a matter within the discretion of the trial court. The court has authority to select a proper person as guardian, and under no existing provision is the court required to give any weight to the wishes of the ward, as is the case in appointing guardians for minors. Even the appointment of a stranger as such guardian, in preference to the nominee of the incompetent, has been held valid. (*Matter of Coburn*, 165 Cal. 202, 218 [131 Pac. 352].) No abuse of this discretion appears from the record.

The order appealed from is affirmed.

Tyler, P. J., and Knight, J., concurred.