**Kenneth WINETEER and Bertha Wineteer, Plaintiffs-Respondents,**

v.

**J. W. KITE and Norma Lee Kite, Defendants-Appellants.**

No. 24257.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

————◆————

Jack H. Denny, Glasgow, W. F. Daniels, Fayette, for appellants.

Raymond C. Lewis, Jr., David L. Knight, Smith & Lewis, Columbia, William B. Nivert, Jr., Glasgow, for respondents.

CROSS, Presiding Judge.

This action was instituted by plaintiffs Wineteer, husband and wife, as a suit for a declaratory judgment against defendants Kite, also husband and wife. Plaintiffs sought the court's declaration that a covenant contained in a sales contract under which they had sold defendants their interest in a supermarket was not binding upon them as an agreement not to compete directly or indirectly with defendants for a specified time in a specified area. In the alternative, and in the event the court adjudged the covenant to be valid and binding upon them as a "non-competition" agreement, plaintiffs asked the court to declare that the effect of such agreement did not prohibit them from completing construction of a mercantile building they had planned, and renting it to a third party for occupancy as a supermarket.

Defendants filed answer asserting the validity of the noncompetition agreement and praying declarations directly counter to those requested by plaintiffs. Defendants also filed a cross petition praying the court to enjoin plaintiffs from erecting a building for sale or lease to any person for use in conducting a competitive grocery or supermarket business or otherwise engaging in the operation of a grocery or supermarket business, directly or indirectly, for a period of ten years, and within 25 miles of Glasgow, Missouri.

The essential facts of the controversy are established by admissions in pleadings, stipulations of fact, documentary evidence and oral testimony, and are here set out. Plaintiffs came to Glasgow, Missouri, in 1940 where they engaged in the grocery business until in September, 1958, they "closed up" their grocery store. At about the same time they remodeled another building they owned in Glasgow (part of which they had acquired in 1951 and part in 1958) and leased it to Paul M. Lowther and Mary J. Lowther, his wife, for occupancy as a grocery store, which the Lowthers operated until January, 1963. Plaintiff Bertha Wineteer performed some service for the Lowthers as a cashier in their store in the latter part of 1958 and during part of 1959. Likewise, plaintiff Kenneth Wineteer was employed by the Lowthers as a stock clerk during part of 1959. During the time of their employment by the Lowthers, plaintiffs took no part in the management, control or operation of their business. In November, 1959, plaintiffs purchased a restaurant business in Glasgow and operated it under the name of "Wineteers' Cafe" until July, 1960.

On January 7, 1963, plaintiffs and the Lowthers as first parties entered into a written agreement with defendants as second parties, whereby the former agreed to sell and convey to the latter their respective interests in the building, fixtures, equipment and stock of merchandise comprising the "Glasgow U. S. Supermarket"—same being the grocery business the Lowthers had been operating since November, 1958, in the building they had leased from plaintiffs. Pursuant to this agreement plaintiffs duly conveyed the store building and certain of the store fixtures and equipment owned by them to defendants and the Lowthers conveyed to them the remaining portion of the store fixtures and equipment, together with the stock of merchandise. In turn, and as consideration for these conveyances, the defendants paid plaintiffs and

the Lowthers the purchase price sums which they were respectively entitled to receive under the terms of the agreement, took immediate possession of the business, and have operated it continuously to the present time.

The written agreement above described contains the following quoted paragraph:

"The party of the first part, Paul M. Lowther and Mary Josephine Lowther hereby covenant and agree that they will not compete with second parties, directly or indirectly, within a radius of 25 miles of Glasgow, Missouri for the ensuing ten years. The first parties, Kenneth and Bertha Wineteer likewise agree not to compete directly or indirectly with second parties within a radius of Glasgow, Missouri of 25 miles for the ensuing ten years".

Since 1947 plaintiffs have engaged speculatively in the purchase and sale of real estate in Glasgow. Their transactions include the purchase of five or six business buildings and some seven to ten houses. They would "spend some money on them and fix them up a little bit and rent them for awhile and sell them". In January, 1964, plaintiffs purchased about 106 acres of land located on Highways 5 and 240 about two blocks outside the city limits of Glasgow. They planned and commenced construction of a building thereon to house a small shopping center which would include space for a supermarket. Plaintiffs intend to lease this portion to "someone who is going to be engaged in the grocery business", but have not yet determined whether they will be paid "by monthly rent or by a percentage of the gross (sales) or by some other arrangement".

After defendants learned of these plans, they went out to the building site where preliminary grading was being done and informed plaintiffs to the effect that they "couldn't lease the building—for a supermarket" because of "this contract—(they) —had signed". Following this challenge

of plaintiffs' right to construct and lease the building as they had planned, plaintiffs filed this suit to effect a judicial determination of the question before proceeding further with the project.

After making extensive findings of fact, the essential portion of which generally conforms to the foregoing statement of facts and is virtually undisputed by the parties, the trial court rendered its declaratory judgment decreeing: (1) that the provision in the contract of sale between the parties that plaintiffs would not compete directly or indirectly with defendants in the grocery supermarket business within a radius of 25 miles of Glasgow, Missouri, for a period of ten years is a "valid, legal, binding and enforceable agreement on which plaintiffs—are bound", and (2) that "the actions of the plaintiffs in purchasing a tract of land near Glasgow and grading same coupled with the admitted purpose and intention of erecting a new building thereon and renting or leasing said new building to some unknown person or persons for the operation of a grocery store or supermarket on unspecified terms at a rental based upon an unspecified percentage of the gross receipts of said grocery store or supermarket do not constitute a violation of the agreement of plaintiffs not to compete directly or indirectly with defendants". It was the further judgment of the court that defendants' prayer for injunctive relief be denied and that the costs of the action be taxed in equal shares against plaintiffs and defendants. Notwithstanding the judgment is in part adverse to the interests of plaintiffs they have made no complaint of it. Defendants prosecute this appeal.

Defendants still assert, as the sole appeal issue in controversy, that plaintiffs by constructing a proposed building and leasing it to a third person for occupancy as a grocery store or supermarket would violate their covenant not to compete with defendants. On this premise the defendants charge the trial court with error in ruling to the contrary and in refusing to enjoin

plaintiffs from so constructing and leasing such a building.

■ Since this is a non-jury case, it is our duty to review it de novo on both the law and the evidence as in suits of an equitable nature. Rule 73.01(d) V.A.M.R. It will not be necessary to defer to the trial court on any questions of credibility of witnesses because the determinative facts are not in dispute. See Willoughby v. Safeway Stores, Inc., Mo.App., 397 S.W. 2d 748 and Mueller v. Larison, Mo.Sup., 355 S.W.2d 5. The cited rule further admonishes that the judgment shall not be set aside unless clearly erroneous.

Preliminarily defendants urge that this case should be ruled under general principles of equity which is "reluctant to permit a wrong to be suffered without remedy" and which "will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality", citing Weaver v. Jordan, Mo. App., 362 S.W.2d 66.

From plaintiffs' standpoint, our attention is directed to the background of legal authority that trade-restricting covenants are not favorites of the law and are to be strictly construed in favor of the covenantor, Prentice v. Rowe, Mo.App., 324 S.W.2d 457, and that restrictions on the free alienation of land are likewise strictly construed, as the Supreme Court held in Kerrick v. Schoenberg, 328 S.W.2d 595.

■ Fundamentally, this appeal controversy will be resolved by determining the intention of the parties as expressed in the language of the contract, the covenant in question. That provision will be considered according to the plain, ordinary and usual meaning of the words and phrases it contains, as there is nothing in the record to indicate that any language was used in a legal or technical sense. See Liberty Storage Co. v. Kansas City Terminal Warehouse Company, Mo.App., 340 S.W.2d 189. "All mercantile contracts ought to be interpreted according to their plain meaning, to men of sense and understanding, and not

according to forced and refined interpretations which are intelligible only to lawyers, and scarcely to them,." Vol. 12 Am. Jur., Contracts, Sec. 226, p. 745.

Observing the foregoing rules, the only understanding we are able to derive from the words "(plaintiffs) agree not to compete directly or indirectly with second parties" is to the effect that the parties intended to contract *generally* that plaintiffs would not engage in the grocery or supermarket business in competition with defendants. There is no evidence suggesting that the parties considered or discussed the question of what acts or enterprises would constitute competition or would amount to a violation of the covenant. There was no suggestion or effort made by them to amplify it by any further provision. No restriction against leasing was requested by defendants. The parties were content to accept the agreement, phrased as it was, in general, unspecific terms. Therefore, we conclude that they entered into the agreement in contemplation only of such restrictions upon competition by plaintiffs as the law would impose under the terms of the covenant in accordance with such factual circumstances that might arise. "The question of what facts will constitute a breach of contract is one of law to be determined by the court * * *". 17A C.J.S. Contracts § 630, p. 1266.

Neither plaintiffs nor defendants claim that this case is ruled by any decided Missouri case. Our independent research does not disclose Missouri authority proximately in point. Consequently, recourse to the decisions of other jurisdictions which have considered the question here presented is necessary to determine it.

Defendants suggest that the "closest" Missouri case appears to be Weaver v. Jordan, Mo.App., 362 S.W.2d 66, wherein the sellers of a restaurant business, after executing a noncompetition agreement, proceeded to buy property on the same street, erected a building thereon, leased it to third parties for use as a restaurant, bought and

owned the restaurant equipment used, served as employees in the new business, and effectively managed it. In addition to rental the sellers also received salaries as employees and a share of the profits equal to 10% of the gross receipts. Relying on the foregoing and other supporting facts, the Springfield Court of Appeals stated that the sellers only "pretended to lease this property", stigmatized the "lease" and related activities as a "sham", and ruled that "plaintiffs (sellers) were actually engaged in and operating a restaurant business in violation of the restrictive clause". The Weaver case is so factually disparate with the instant case that it cannot be considered as supporting authority for defendants' position.

Defendants cite and rely principally upon Dowd v. Bryce et al., 95 Cal.App. 644, 213 P.2d 500, 14 A.L.R.2d 1329, wherein the plaintiff sold land and a grocery and liquor business to defendant. The sales contract contained a covenant not to engage in a similar business and *also an agreement expressly barring the sale of any land in the restricted area* to a purchaser contemplating a business of the same nature. In an action for a declaratory judgment the question was presented to the court whether plaintiff's covenant would be violated by his leasing of other property he owned within the restricted limits to a third person for use in establishing a liquor business in competition with defendants. In deciding the case the appellate court stressed that the provision against the sale of the land to a purchaser contemplating the operation of a business in competition with defendants, although possibly invalid as a restraint on alienation, was to be considered together with other pertinent provisions of the sellers' covenant in ascertaining the intention of the parties. Although it was clearly obvious to the court that sales of land were expressly barred by the covenant and that the lesser act of leasing could have well been implied to be a prohibited act, the court did not choose to make its determination on that basis. Instead, it reached the conclusion that the parties did not intend that plaintiff would be permitted to lease his property for the purpose of competition *on the independent ground that such lease constituted indirect competition.*

On its face the Dowd opinion appears to be supporting authority in defendants' favor. However, the decision of the court, founded as it is on the basis of competition instead of the clearly expressed covenant restriction against selling, has been criticized in 14 A.L.R.2d 1333, Annotation, Contract Not to Compete—Lease, by editorial comment reading in part as follows:

"There can be hardly any doubt that the decision in Dowd v. Bryce * * * is correct under the circumstances. The inclusion in the restrictive covenant of the provision against selling other property to future competitors shows the intention of the parties as to the scope of the prohibited activities clearly. It is more difficult, however, to justify the decision on the ground that the lease amounts to indirect competition by the lessor. While the arguments advanced by the court in favor of this viewpoint are of considerable force, the decision seems to go further in restricting the seller in his business activities than most cases involving similar situations. * * * Thus, it has been held generally that there is no breach of the covenant where the covenantor merely lends money to a person engaged in a similar business, or where the covenantor sells land to another who erects a building thereon for the purpose of carrying on the business. On the other hand there is a breach of the covenant where the covenantor engages in the business as a partner, organizes a competing corporation, or otherwise engages in a similar business under corporate form, or takes active interest in the encouragement of the business in other ways.

"Without endeavoring to lay down any general principles it may be sug-

gested that only such conduct by the covenantor constitutes a breach of the agreement which amounts to an active participation on his part in the running of the competitive business even though this activity is conducted by indirect means."

We have found only one instance in which the Dowd case has been approved or followed as authority on the specific question here considered. In the Ohio case, J. D. Nichols Stores v. Lipschutz, 120 Ohio App. 286, 201 N.E.2d 898, the court adopted the reasoning of Dowd and also held that a seller of a business violates his agreement to refrain from competition, per se, and without any other act on his part, by leasing other premises for purposes of a similar business. In its effect this holding amounts to an extension or redeclaration of the Dowd case ruling and would be subject to the same critical examination that the Dowd result has undergone.

Defendants also cite Langenback v. Mays, 207 Ga. 156, 60 S.E.2d 240, where the sellers of a tourist camp agreed not to conduct a competing business on adjoining land owned by them. Later, however, they rented those premises to a purported lessee, their own daughter, who took with notice of the restrictive agreement and operated thereon a tourist court business. The court granted injunctive relief against the lessee on the ground that her operation constituted violation of the specific agreement entered into by the landowners, equally binding upon their lessee who took with notice that they would not use the land for competitive tourist camp purposes. The injunction was not granted on the basis of a general non-competition covenant. The case is not in point. Additionally defendants cite C. H. Barrett Co. v. Ainsworth, 156 Mich. 351, 120 N.W. 797, and Amsterdam v. Marmor, 125 Misc. 865, 212 N.Y.S. 300. These are not cases in which leases are involved as subject matter and are not otherwise in point.

Authority favoring plaintiffs' side of the case is much more abundant. At least five cases reported from sister states hold unequivocally that the leasing of property by a vendor to a competitor of the vendee does not of and in itself violate a covenant not to compete. In Ericson v. Jayette, 149 Fla. 82, 5 So.2d 453, decided by the Supreme Court of Florida, the sellers sold and conveyed their restaurant business by a bill of sale containing a lengthy, extensive and very restrictive covenant not to engage, directly or indirectly, in the restaurant business in the county for a period of ten years. After the sale the vendors leased a building which they owned to a third party who operated a restaurant business therein. The evidence established that the restaurant was owned and managed by the tenant. No participation by sellers was shown. An injunction sought by the buyers was denied on the ground that a mere leasing was not a violation of the covenant.

In McKeighan Wachter Co. v. Swanson, 138 Wash. 682, 245 P. 10, affirmed on rehearing, 141 Wash. 694, 250 P. 353, the owner of a garage business sold it to the buyer and covenanted that he would not re-enter such business in the town of its location for a period of five years. He thereafter erected another building across the street and leased it to his son as a location for a garage, and also loaned him a sum of money in order that he might start such business. On conflicting evidence it was held that the seller was in no manner connected with the business and derived no profit from it. On these facts the Supreme Court of Washington held that the covenant was not violated, either by the leasing of the building or the loaning of the money.

And, in Houston Transfer and Carriage Co. v. Williams (Tex.Civ.App.), 201 S.W. 712, Tex.Com.App., 221 S.W. 1081, the sale of a transfer company was effected by the owner who transferred the "good will" of the business and covenanted that he would not engage in a similar business in Houston. Subsequently, his wife, as his sole heir and

legatee, leased a stable building he had owned to third persons who competed with the buyers and were also permitted to use a telephone number formerly used by the seller. On final appeal the Texas Commission of Appeals reversed and remanded the cause on other and unrelated grounds but affirmed the ruling of the appellate court that the covenant was not breached by the leasing (or by the permitted use of the telephone number). The court stated:

"With reference to the assignment complaining of the violation of the good will covenant, it is observed that the bill of sale contains no restrictive clause binding defendant in error not to lease the property for a competitive business; neither does it contain a restrictive clause preventing the use of the telephone number. Their rights are to be measured by the terms of the written contract, * * *.

"Plaintiffs in error seek to give the term 'good will' such signification as to include a restriction on the part of defendant in error to lease the premises at 1604 Oak street for a competitive business, and also to prevent the use of the telephone number at that point by the lessee. We do not think that the term is comprehensive enough to include such restrictions. The mere purchase of a good will is insufficient, in the absence of an express covenant, to restrict a party in the enjoyment of a right which he has not bargained away. Had plaintiffs in error desired the restrictions mentioned, they should have secured them by positive agreement."

This case is cited, approved, and extensively quoted from in the late case of Lewis v. Stuart, Tex.Civ.App., 351 S.W.2d 372, decided in 1961.

In Management, Inc. v. Schassberger, et al., 39 Wash.2d 321, 235 P.2d 293, the vendors of a laundry and dry cleaning business covenanted not to engage in that business directly or indirectly for a period of five years in Yakima, Washington. Mrs. Anne Schassberger, one of the covenanting vendors, later acquired certain real estate and leased it to others under terms which *required* that the premises be used for the conduct of a dry cleaning and laundry business. Management, Inc., the buyer, sued Mrs. Schassberger and other defendants, alleging a conspiratorial violation of the restrictive covenant and praying injunctive relief. On a finding that the evidence failed to show that Mrs. Schassberger was engaged in the dry cleaning or laundry business or that she had any interest therein, the trial court dismissed the action as to her. In so doing the court relied upon McKeighan Wachter v. Swanson, supra. The Supreme Court of Washington affirmed the dismissal with the statement that the McKeighan Wachter case "is directly in point".

Of considerable antiquity, but, in our opinion, of commensurate respectability, is the case of Bradford v. Peckham and another, 9 R.I. 250, decided in 1869 by the Supreme Court of Rhode Island. Holding that the vendor of a business and its attendant good will was not precluded from leasing other property to another person who might carry on the same business, the court used this language: "Nor can we find any decided case where a person who sells a good will is prevented from leasing other property he may own in the neighborhood to another person who may carry on the same business, provided there is no collusion, and the lessor has no interest in the business". In 1920 this case was cited and relied upon by the court in Houston Transfer and Carriage Company v. Williams, supra.

The persuasive effect of the five cases noted immediately above, all expressly holding that leasing in and of itself is not a violation of an agreement to refrain from competition, is materially reinforced by the greater weight of judicial decision in cases arising under analogous situations of fact. It is generally held that there is no breach of the covenant where the covenantor merely lends money or advances credit to a

person engaged in a similar business[1]; where he only erects a building on land and conveys the property to another person for competitive purposes[2]; or where he is employed by a competitor in a subordinate capacity such as clerk or other inferior servant, and such employment is not rendered in management or control of the business or amounts to participation therein, or in any manner creates an effect injurious to the covenantor[3]. See 17A C.J.S. Contracts § 327(4), pp. 278–279, for a concise statement of the foregoing general rules. By way of contrast, the same authority, in the same cited paragraph, lays down general guide lines as to what acts constitute a breach of the covenant in this language: "There must be such a participation by the covenantor in the conduct of the business as to constitute engaging in it or as otherwise to come within the meaning of the particular covenant. * * * Ordinarily there is a breach where the covenantor engages in the business as a partner, or as principal, conducts or controls the business for another as manager or in a similar capacity, takes an active interest in the encouragement of the business, organizes a competing corporation, or otherwise engages in a similar business under corporate form".

We do not accept the Dowd case as reliable authority to support defendants' appeal contention. It is not in point on the facts; it has been criticized by standard authority for its implication that all leases are violations of good will covenants; it is in conflict with at least five clear decisions to the contrary which stand undisturbed by judicial criticism; furthermore, it is in conflict with principles of law generally observed by courts in determining whether, under the circumstances of a particular case, there has been such an active partici-

pation by the vendor in the operation of a competitive business as to constitute a breach of his agreement to refrain from competition. Nor does J. D. Nichols Stores v. Lipschutz, supra, transcend its parent case (Dowd) as acceptable authority for reasons we have already stated.

■ It is our view that the massive weight of authority, part of which is incorporated in this opinion, supports plaintiffs' submission that the naked acts of erecting a building and leasing it to person who will compete with their vendee do not, per se, amount to a violation of their covenant. Such is our ruling on the issue. It necessarily follows as our conclusion that defendants have not sustained their appeal burden to demonstrate that the judgment is clearly erroneous.

■ Let us emphasize that this decision is a declaration of legal rights premised upon and applicable only to a hypothetical state of facts which do not presently exist, but repose only within the minds of plaintiffs as a matter of future intention. In contemplation of activity in accordance with their plans, we specifically hold that plaintiffs are legally entitled to finish construction of their building and lease it as a location for a grocery store or supermarket to some undetermined third person for a rental as yet undetermined, to be paid either by a specified flat sum, or on the basis of a percentage of gross receipts, or on some other basis not yet determined,— only if and so long as plaintiffs refrain from disparaging the good will of their vendees by any act or conduct amounting to an active participation in the operation or management of the competitive business as defined by the terms of this opinion and by the law generally. It is necessarily our con-

1. See 1 A.L.R.3d 778, Annotation, Rendering Financial or Other Assistance to Another as Breach of Covenant not to Compete.

2. Hebert v. Dupaty, 42 La.Ann. 343, 7 So. 580; Simmons v. Johnson, La.App.,

11 So.2d 710; Huddleston v. Mariotti, 143 W.Va. 419, 102 S.E.2d 527.

3. See 93 A.L.R. 121, Annotation.

comitant conclusion that defendants are not entitled to injunctive relief.

In the event plaintiffs should exceed the limits of action permitted by this decision and participate in some fashion in the operation of their tenant's business or engage in some scheme, or in concerted action with that person or with others, to circumvent the covenant or violate the good will granted by it, nothing contained in this opinion is intended to limit the right of defendants to institute further judicial proceedings for appropriate legal relief.

■ As a separate point plaintiffs urge that the cost of a transcript of the evidence should be specifically taxed against defendants. The facts are that defendants originally filed an abbreviated transcript which omitted all of the oral evidence. Thereafter plaintiffs secured the preparation of and filed an additional transcript containing the oral evidence, for which defendants, as appellants, have refused to pay. Plaintiffs argue that under Civil Rule 82.12 it was defendants' responsibility to cause the evidence to be included in the transcript, absent agreement by plaintiffs, and that the cost thereof, if taxed against defendants, should include the cost of the supplemental transcript, unless the court finds that plaintiffs were unreasonable in requiring that the evidence be included.

We observe that both plaintiffs and defendants made use of the supplemental transcript by references in their respective briefs to the testimony it contains. Additionally, the supplemental transcript was of utility to the court in arriving at its understanding of the transactions which gave rise to the suit, and of the issues generally. Under these circumstances it is our finding that the plaintiffs did not unreasonably cause the transcript of the evidence to be filed. Accordingly, we tax the cost of the additional transcript, as well as the costs of this appeal generally, against defendants.

Subject to interpretation in accordance with this opinion, the judgment is affirmed.

HOWARD, J., and CLEVENGER, Special Judge, concur.

BLAIR, J., not participating.