**PRECISION HOMES OF INDIANA, INC., David Van Dyke, President of Precision Homes of Indiana, Inc., David Van Dyke, Individually, Loucks Concrete Specialists, and Smith Ready Mix, Inc., Appellants–Defendants,**

v.

**John PICKFORD and Tama Pickford, Individually and as Husband and Wife, Appellees–Plaintiffs.**

No. 45A03–0508–CV–355.

Court of Appeals of Indiana.

March 15, 2006.

federal income tax rate in the two previous IAWC rate cases cited in IAWC's brief.

David C. Jensen, John P. Twohy, Eichhorn & Eichhorn, Hammond, for Appellants.

Timothy F. Kelly, Daniel Stephens, Kelly Law Offices, Dyer, for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants Precision Homes of Indiana, Inc., David Van Dyke, individually and as president of Precision, Loucks Concrete Specialists, and Smith Ready Mix, Inc. (collectively, "Precision"), appeal the trial court's denial of their motion to dismiss this suit arising out of the construction of a home for appellees-plaintiffs John and Tama Pickford. Specifically, Precision argues that the trial court erred in failing to enforce the arbitration clause contained in the Contract to Build Residence (Contract). Finding that the arbitration agreement is valid and that the Pickfords' claims are within the scope of the agreement, we reverse and remand to the trial court with instructions to enter an order compelling arbitration.

### FACTS

The Pickfords engaged Precision, a general contractor, in July 2004 to construct a new custom home in Chesterton. On July 29, 2004, the parties signed the Contract, which provided for a total price of

$1,080,000. The "Disputes" section of the Contract provided:

Any and all claims, disputes and controversies by and between the Contractor and Purchasers arising from or related to the Property, any improvements to the Property, the sale of the Property, including, without limitation, any claim of breach of contract, negligence, negligent or intentional misrepresentation or non disclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealings, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter CAS) in effect at the time of the request for arbitration or by such other arbitration service as Contractor shall, in its sole discretion select, and pursuant to the rules of that arbitration service in effect at the time of the request for arbitration.... The decision of the arbitrator shall be final and binding and may be entered as a judgment in any state or federal court of competent jurisdiction. This arbitration agreement shall be deemed to be a self executing arbitration agreement. Any disputes concerning interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues and any defense based on waiver, estoppel or laches shall be decided by the arbitrator. The initiation of or participation by any party in any judicial proceedings concerning this arbitration agreement or any matter arbitrable hereunder shall not be deemed a waiver of the right to enforce this arbitration agreement, and notwithstanding provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this arbitration agreement. Any party who shall commence a judicial proceeding concerning a dispute that is arbitrable, however, shall also be deemed a party requesting arbitration within the meaning of this arbitration agreement.... Parties expressly agree that this arbitration agreement involves and concerns interstate commerce and is governed by the provisions of the Federal Arbitration Act (9 USC § 1 *et seq.*)....

IC § 32–37–3 contains important requirements you must follow before you may file an arbitration for defective construction against the Contractor or Builder of your home. Sixty (60) days before you file your arbitration you must deliver to the Contractor or Builder written notice of any construction conditions you allege are defective and provide your Contractor or Builder the opportunity to make an offer to repair or pay for the defects. You are not obligated to accept any offer made by the Builder or Contractor. However if you unreasonably reject a reasonable written offer and commence an action against the Builder or Contractor, an Arbitrator may award attorney's fees and costs to the Builder or Contractor. There are strict deadlines and procedures under state law and failure to follow them may affect your ability to file for arbitration.

Appellant's App. p. 90–91. The Pickfords were represented by counsel during the contract negotiations, but their lawyer subsequently testified that his clients did not seek nor did he provide them with his advice regarding the agreement to arbitrate.

Precision hired Loucks as the subcontractor for the concrete foundation work for the Pickfords' residence. During the construction of the concrete foundation, the Pickfords observed and complained to

Precision that the foundation was not constructed in accordance with the contract, the plans, state code, local ordinance, and construction industry standards. On October 14, 2004, John Pickford met with Van Dyke to discuss the Pickfords' concerns. Pickford demanded that the home's foundation be torn out and rebuilt from scratch. Van Dyke refused to accede to this request, and he is alleged to have threatened Pickford with physical harm and to have physically restrained him from leaving Precision's offices.

The Pickfords refused Precision's request for arbitration. On February 2, 2005, the Pickfords filed suit against Precision, alleging that they had been fraudulently induced to enter into the Contract and to agree to arbitration, that Precision had breached the Contract, that Van Dyke had assaulted, committed battery upon, and falsely imprisoned John Pickford, and that Precision had committed conversion and slander of the Pickfords' title to the real estate. Following a change of venue, on March 14, 2005, Precision filed a motion to dismiss or stay in favor of arbitration. On June 24, 2005, the trial court held a hearing on the matter, and on July 7, 2005, the trial court entered an order denying Precision's motion. The trial court found, in pertinent part:

> This Court finds that the construction contract misstates the Indiana Construction Warranty Act, Ind.Code § 32–27–3 *et seq.* By [sic] substituting the word arbitration for the word litigation while quoting the notice contained in Indiana Code § 32–27–3–12. Even though the statute (I.C. § 32–27–3–12) states the language of the notice need only be *substantially* the same as in the statute the construction contracts [sic] misrepresentation and misstatement of said statute is a crucial difference and not an insubstantial one. Nowhere in the contract does it state the purchasers (Plaintiffs

Pickfords) have a statutory right to sue the builders. (Defendants Precision Homes of Ind. Inc.). Since the arbitration clause limits Plaintiffs' remedy to arbitration only and then gives Defendant the power to unilaterally choose the arbitrator and the rules governing the arbitration, the clause is unconscionable on the facts of this case and Defendant's Motion is DENIED.

> If the Parties sincerely wish to arbitrate these claims, they are free to do so under the Indiana A.D.R. Rules and the Lake County A.D.R. Rules.

Appellant's App. p. 11 (emphasis in original). Precision now appeals.

## DISCUSSION AND DECISION

Precision argues that the trial court erred in denying its motion to dismiss or stay in favor of arbitration. Specifically, Precision contends that the arbitration agreement was valid because it fulfills the requirements of the Federal Arbitration Act (FAA) and Indiana's Uniform Arbitration Act (IUAA), because the agreement to arbitrate was not procured by fraud, and because the agreement to arbitrate was not unconscionable. Precision also argues that this case fits within the scope of the arbitration agreement.

### I. Standard of Review

The trial court's denial of a motion to compel arbitration is reviewed de novo. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 597 (Ind.Ct.App.2003). The party seeking to compel arbitration must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. *Bielfeldt v. Nims*, 805 N.E.2d 415, 417–18 (Ind.Ct. App.2004), *trans. denied.* Whether the

parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind.2004). "Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties." *Id.* (quoting *Trimble v. Ameritech Publ'g, Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998)). Thus, imposing on parties a policy favoring arbitration before determining whether they agreed to arbitrate could frustrate their intent and freedom to contract. *Id.* Only after it has been determined that the parties agreed to arbitrate their disputes does the federal policy favoring arbitration play an important role in determining the scope of the arbitration agreement. *Id.*

██ The FAA, 9 U.S.C. § 1, *et seq.*, governs actions in both federal and state courts arising out of contracts involving interstate commerce. *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The IUAA, Ind.Code § 34-57-2-1, *et seq.*, also strongly favors enforcement of agreements to arbitrate. *See Homes By Pate, Inc. v. DeHann*, 713 N.E.2d 303, 306 (Ind.Ct.App.1999). Arbitration must be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1162 (Ind.Ct.App. 1993).

## II. Validity of Arbitration Agreement

Before determining whether the arbitration clause covers the present dispute, we first face the threshold question of whether the parties have agreed to arbitrate this dispute. We will therefore address the issue of the validity of the arbitration clause. In order to be enforceable, an agreement to arbitrate must be in writing and evince an intention to resolve some controversy through arbitration. 9 U.S.C. § 2; Ind.Code § 34-57-2-1(a). The agreement at issue here clearly fulfills these criteria because it states in the written Contract, "Any and all claims, disputes and controversies by and between the Contractor and Purchasers arising from or related to the Property ... shall be submitted to arbitration ...." Appellant's App. p. 90.

██ This does not end our inquiry into the validity of the arbitration agreement because the Pickfords contend that it was fraudulently procured, and the trial court found that the agreement was unconscionable. The Pickfords assert that they were fraudulently induced to enter into the arbitration agreement because Precision substantively altered the statement required under Indiana Code section 32-27-3-12 by changing the word "lawsuit" from the statute to the word "arbitration" in the Contract. The elements of fraud are: (1) a material misrepresentation of past or existing fact by the party to be charged, which; (2) was false; (3) was made with knowledge or in reckless ignorance of the falsity; (4) was relied upon by the complaining party; and (5) proximately caused the complaining party injury. *Park v. Kartes*, 650 N.E.2d 347, 349 (Ind.Ct.App. 1995).

██ Upon entering into a contract for the construction of a residence, Precision was required by Indiana Code section 32-

27–3–12 to provide notice to the Pickfords of its right to offer to cure construction defects before the Pickfords could commence litigation against Precision. The required notice must be in "substantially" the same form set forth in Indiana Code section 32–27–3–12(b). The notice in the Contract is exactly the same as the wording in the statute except that where the statute says "lawsuit," the Contract says "arbitration," and where the statute says, "court," the Contract says, "Arbitrator." Appellant's App. p. 91. Assuming without deciding that this is a material misrepresentation, the Pickfords cannot establish fraud on this basis. In general, a misstatement of the law cannot form the basis of fraud because everyone is presumed to know the law, and, therefore, the allegedly defrauded party cannot justifiably have relied on the misstatements. *Am. United Life Ins. Co. v. Douglas,* 808 N.E.2d 690, 703 (Ind.Ct.App.2004), *trans. denied.* Any misstatement was one of law, not of fact, because the statement in the Contract that the Pickfords point to is mandated by and quoted from statute. Furthermore, the Pickfords were represented by counsel in the Contract negotiations. The fact that they did not instruct their attorney to review the "Disputes" section of the Contract only demonstrates that the Pickfords failed to diligently safeguard their own interests. The Pickfords had no right to rely on Precision's statements regarding the law and therefore did not establish that the arbitration agreement was fraudulently induced.

 As for the finding of unconscionability, we note that to be unconscionable, a contract "must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.,* 533 N.E.2d 1279, 1286 (Ind.Ct.

App.1989). Often there are circumstances that show that there was unequal bargaining power at the time the contract was executed that led the party with lesser power to enter into it unwillingly or without knowledge of its terms. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.,* 412 N.E.2d 129, 131 (Ind.Ct.App.1980).

Such is not the case here, inasmuch as the Pickfords were represented by counsel during the contract negotiations. The Pickfords and their counsel had every opportunity to read and understand the arbitration agreement. So the Pickfords were not in an unequal bargaining position with Precision, and if they entered into the contract without knowledge of its terms, that was of their own doing. And the arbitration clause does no more than limit the remedy available to *both* contracting parties. Thus, they are on equal footing with regard to the effect of the arbitration agreement as well. It is of no moment that the Contract allows Precision to choose the arbitration service because Pickford cannot show that the as yet unappointed arbitrator would be biased in favor of Precision. In short, we simply cannot see how an agreement to arbitrate in this case is an agreement that no sensible man not under delusion, duress or in distress would make and no honest and fair man would accept. Therefore, the arbitration agreement is not unconscionable. Thus, the arbitration agreement is valid, and the trial court erred in finding otherwise.

*III. Scope of Arbitration Agreement*

 In addition to the existence of an enforceable arbitration agreement, a party seeking to compel arbitration must demonstrate that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. *Bielfeldt,* 805 N.E.2d at 418. Any doubts concerning the scope of the arbitrable issues

should be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used. *Polinsky v. Violi,* 803 N.E.2d 684, 687 (Ind. Ct.App.2004); *Showboat Marina,* 790 N.E.2d at 598.

As we have previously noted, the arbitration agreement states:

> Any and all claims, disputes and controversies by and between the Contractor and Purchasers arising from or related to the Property, any improvements to the Property, the sale of the Property, including, without limitation, any claim of breach of contract, negligence, negligent or intentional misrepresentation or non disclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealings, shall be submitted to arbitration . . . .

Appellant's App. p. 90. It is beyond dispute that the Pickfords' claims for fraudulent inducement to enter the contract, fraudulent inducement to agree to arbitration, breach of contract, conversion, and slander of title are arbitrable. The question is whether the Pickfords' claims for assault, battery, and false imprisonment against Van Dyke are arbitrable.

The Pickfords' complaint alleges that on October 14, 2004, John Pickford met with Van Dyke, Precision's president, to discuss his concerns regarding the construction of the foundation of the home. Appellant's App. p. 14. The complaint further alleges that "Defendants Precision Homes of Indiana, Inc. by and through its president, David VanDyke [sic] became belligerent" and that "[d]uring the course of the meeting, David VanDyke [sic] as president of Precision Homes of Indiana, Inc. threatened the plaintiff John Pickford with phys-ical harm" and "physically restrained the plaintiff John Pickford from leaving Precision's offices after VanDyke [sic] had physically threatened him." *Id.*

The alleged physical altercation and restraint arose from a dispute regarding the property—specifically, the condition of the foundation and Precision's refusal to tear it out and lay a new foundation. This reasonably fits within the language of this arbitration agreement because "all claims, disputes and controversies by and between the Contractor and Purchasers arising from or related to the Property . . . shall be submitted to arbitration." Appellant's App. p. 90. Because any doubts about the scope of the arbitration agreement must be resolved in favor of arbitration, we find that the arbitration clause in the Contract is sufficiently broad to cover the issues of assault, battery, and false imprisonment given the context in which these claims arose. As such, the Pickfords' claims must be submitted to arbitration in accordance with the arbitration agreement.

The order of the trial court denying Precision's motion to dismiss or stay in favor of arbitration is reversed and remanded with instructions to enter an order compelling arbitration.

NAJAM, J., and BAILEY, J., concur.