

FILED

Dec 23 2015, 10:11 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Arend J. Abel | Janet A. McSharar |
| Jeffrey A. Hammond | Jennifer L. Strange |
| Cohen and Malad, LLP | Drewry Simmons Vornehm, LLP |
| Indianapolis, Indiana | Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Carole Storch, as Personal
Representative for the Estate of
Charles Sindledecker,

*Appellant-Plaintiff,*

v.

Provision Living, LLC; PVL
Tenant Holdings, LLC, d/b/a
Greentree at Fort Harrison,

*Appellees-Defendants*

December 23, 2015

Court of Appeals Case No.
49A02-1505-CT-352

Appeal from the Marion Superior
Court

The Honorable Heather Welch,
Special Judge

Trial Court Cause No.
49D01-1201-CT-2695

**Baker, Judge.**

[1] Carol Storch appeals the judgment of the trial court holding that her father's estate is not entitled to an award of attorney fees pursuant to a residence agreement entered into between her father and his assisted living facility. Finding that the plain language of the residence agreement compels an award of attorney fees in this case, we reverse.

## Facts

[2] The defendants operate an assisted living facility in Indianapolis by the name of Greentree at Fort Harrison (Greentree). In 2006, Charles Sindledecker, who was suffering from Alzheimer's disease and was no longer able to care for himself, entered into a residence agreement with Greentree. The agreement contained a clause regarding attorney fees:

> In the event of any controversy, claim, or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to recover from the other party reasonable expenses, costs, and attorney's fees.

Appellant's App. p. 58. The contract also made clear that Sindledecker would have to maintain his own health care plan and that Greentree was not responsible for providing medical services. *Id.* at 56.

[3] While residing at Greentree, Sindledecker enjoyed spending time sitting in a chair by the fireplace in the common room. He sat in this chair for long periods of time nearly every day. As his dementia worsened, he became angry when he found other residents sitting in the chair. Greentree responded by removing the

chair from the common room altogether. Sindledecker, however, enjoyed being by the fireplace regardless, and began standing, or sitting on his walker, near where the chair used to be. Realizing the danger this posed, Greentree staff would often move Sindledecker farther away from the fireplace.

[4] On December 10, 2010, Greentree staff found Sindledecker unresponsive on the floor by the fireplace and called 911. As they waited for the ambulance to arrive, the staff took Sindledecker back to his room and began changing his clothes. When the ambulance arrived, the staff informed the paramedics that Sindledecker had been found unresponsive "at a recreational activity." Appellant's App. p. 141. The paramedics took Sindledecker to the hospital, checked his vital signs, and discharged him.

[5] Sindledecker's right arm had been badly burned as a result of this incident and his condition worsened over the next two days. Greentree staff again called 911, and this time informed the paramedics that Sindledecker had fallen near a fireplace and suffered burns. Sindledecker was taken back to the hospital, where he remained for ten days while the burns were treated. He eventually required a skin graft and his wounds did not heal until April 2011. Sindledecker never regained the mobility he had before the fireplace incident— he remained unable to walk and required a feeding tube and catheter. He died on August 10, 2012.

[6] Sindledecker's daughter, Carole Storch, had filed a complaint against Greentree on her father's behalf on January 23, 2012. The complaint included claims of

breach of contract and negligence regarding the fireplace incident. On January 2, 2015, less than two weeks before trial was scheduled to begin, Storch voluntarily dismissed the breach of contract claim. The negligence claim was tried to a jury, which found that Greentree was primarily at fault and therefore liable to Sindledecker's estate for $1,000,020 in damages.

[7] Following the verdict, Storch petitioned the trial court for attorney fees as provided by Sindledecker's residence agreement. Greentree argued that, because Storch had dismissed the breach of contract claim, the residence agreement was not at issue and, therefore, attorney fees could not be awarded pursuant to the agreement. The trial court agreed, and denied Storch's petition. Storch then filed a motion to correct error, which the trial court denied on April 15, 2015. Storch now appeals.

## Discussion and Decision

[8] Indiana adheres to the "American Rule" that parties must pay their own attorney fees absent an agreement between the parties, a statute, or another rule to the contrary. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 458 (Ind. 2012). The trial court's decision that Storch was not entitled to attorney fees in this case was based on its interpretation of terms of the residence agreement entered into by Sindledecker and Greentree. Construction of the terms of a written contract is a pure question of law for the court. *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind. Ct. App. 1999). Accordingly, we review such decisions de novo. *Id.*

[9]  When interpreting a contract, our goal is to give effect to the intent of the parties at the time they entered into the agreement. *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). We begin by examining the plain language of the contract, "reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.*

[10]  Here, the trial court held that Storch could not recover under the terms of the residence agreement because she did not bring a breach of contract claim. It reasoned:

> [T]he Plaintiff and Defendants elected not to submit the breach of contract matter to the jury to determine if the Defendants did or did not breach the contract between Plaintiff and Defendants. The jury was only required to determine if the Defendants committed negligence in this case. Thus, the Plaintiff is not the prevailing party regarding "any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof" and the Plaintiff is not entitled to attorney's fees under this agreement.

Appellant's Br. p. 23. According to this interpretation, the phrase—"any controversy, claim, or dispute between the parties hereto, *arising out of or relating to* this Agreement *or the breach thereof*"—can refer only to claims of breach of the contract, and not to claims premised on a tort theory of liability. Appellant's App. p. 58 (emphases added).

[11]  Such an interpretation is plainly incorrect given the clear meaning of the language used. Had Greentree intended this provision to apply only to claims

of breach of the agreement itself, it could simply have written a provision awarding attorney fees to the prevailing party "in any action brought to enforce this agreement." Such language is commonly found in attorney fee provisions. *See Kuntz v. EVI, LLC*, 999 N.E.2d 425, 433 (Ind. Ct. App. 2013). Yet the provision at issue here clearly goes further, covering not only actions for breach of the agreement, but also "any" other dispute "arising out of or relating to" the agreement "or the breach thereof." Appellant's App. p. 58. Were we to adopt the trial court's interpretation, these latter terms would be rendered meaningless. The above-referenced principles of contract interpretation compel us to avoid such outcomes and, therefore, we must conclude that the plain language of the provision contemplates more than actions for breach of the agreement.

[12] We now must determine whether the present dispute, while a tort claim, nevertheless falls into the category of any claim that arises out of or relates to the agreement. Guidance on this issue from courts of this State is currently limited to decisions interpreting agreements to arbitrate. Similar language is frequently used in such agreements and we have shown no hesitation in holding that it encompasses tort claims.

[13] For instance, in *Precision Homes of Indiana, Inc. v. Pickford*, a couple entered into a contract with a general contractor for the construction of a home. 844 N.E.2d 126, 128 (Ind. Ct. App. 2006), *trans. denied*. The couple then had a contentious meeting with the president of the contracting company, after which they filed claims for assault, battery, and false imprisonment. *Id.* at 130. This Court held

that these claims fell within the scope of the contract's arbitration clause, which called for arbitration of any claims "arising from or related to the Property." *Id.* at 133.

[14] Nearly identical language was at issue in *National Wine & Spirits, Inc. v. Ernst & Young, LLP*, where the companies entered into an auditing agreement and agreed to arbitrate "any claim or controversy arising out of or relating to" the agreement. 976 N.E.2d 699, 702 (Ind. 2012). In that case, the companies had previously arbitrated a claim pursuant to the agreement in which Ernst & Young had emerged victorious. *Id.* at 703. National Wine & Spirits then sued Ernst & Young in tort for fraud and deception, alleging that it had presented altered documents to the arbitration panel in the first suit. *Id.* Our Supreme Court noted the "all-encompassing" nature of the language used by the parties and concluded that it "would defy logic to say that this issue falls outside the scope of the broad arbitration clause, as the documents certainly arise out of or relate to the audit services that E & Y provided for NWS." *Id.* at 706; *see also ISP.com LLC v. Theising*, 805 N.E.2d 767 (Ind. 2004) (claim of fraudulent transfer "relate[d] to" asset purchase agreement for purposes of arbitration clause).

[15] Predictably, Greentree attempts to distinguish these cases on the ground that, unlike the present case, they deal with the enforcement of arbitration clauses. Greentree simply points to this fact and provides no further explanation, apparently in the belief that this distinction alone should compel us to reach the opposite conclusion here. *See* Appellee's Br. p. 6-7. However, contrary to

Greentree's assumption, we see no reason to read identical language two different ways depending on whether it appears in an arbitration provision or any other. It is true that "any doubts about the scope of [an] arbitration agreement must be resolved in favor of arbitration." *Precision Homes*, 844 N.E.2d at 133. However, for this presumption to apply, doubts must exist in the first place. Simply because we have not recognized a similar presumption in the attorney fee context does not mean that we would refuse to enforce attorney fee provisions in cases where the plain language clearly calls for enforcement.

[16] Greentree next argues that enforcement of the attorney fee provision is not called for in this case because the subject matter of Sindledecker's negligence suit simply does not arise out of or relate to the residence agreement. Once again, Greentree does little to develop this assertion into an argument, stating only that Sindledecker's "negligence claim did not involve wrongful eviction, fraud, misrepresentation, or some other tort directly related to the Resident Agreement." Appellee's Br. p. 8-9. We gather from this statement that Greentree believes that the above-listed claims *would* relate to or arise out of the agreement in a way that Sindledecker's negligence claim would not. We are, however, left to ourselves to ponder why this would be.

[17] We find no basis for such a distinction in the plain meaning of the word "relate." According to a modern dictionary, two things "relate" if they simply "have relationship or connection." Merriam-Webster Online Dictionary, http://www.merrianwebster.com/dictionary/relate (last visited November 30,

2015). This definition is clearly very broad, but parties have the right to contract in broad terms if they wish. Looking to other states for guidance, we note that appellate courts in Colorado have had occasion to define "relate"—*in the attorney fees context* nonetheless—and they have chosen to do so in a similarly broad fashion, holding that such language "encompass[es] all issues surrounding the underlying subject matter." *In re Estate of Gattis*, 318 P.3d 549, 558 (Colo. App. 2013).

[18] Greentree reminds us that we are not bound by the decisions of these courts, but fails to give us a reason to disagree. In fact, we believe that this definition makes perfect sense. Courts of this state have already noted the breadth of such language, referring to it as "all-encompassing." *National Wine & Spirits*, 976 N.E.2d at 706. We have little doubt that the parties here intended such language to be quite broad and that they, along with the general public, would understand that anything "related to" an agreement would encompass all issues surrounding the underlying subject matter of that agreement.

[19] Turning to the facts of this case, there can be no doubt that the underlying subject matter of Sindledecker's residence agreement was, indeed, his residence at Greentree. And there can also be no doubt that the events that led to his negligence claim occurred because he resided there, which would not have been the case absent the residence agreement. Thus, reading the contractual language in light of its plain, simple, and intentionally broad meaning, it is hardly difficult to conclude that Sindledecker's negligence claim involves the same underlying subject matter as, and therefore relates to, his residence

agreement. Consequently, we find that the parties must have intended the disputed attorney fees provision to apply to such a claim.

[20] We must clarify one final point regarding the trial court's concern that the residence agreement was never presented to the jury. While it is true that the jury would have been required to decide if a breach of the agreement had occurred, as we have already made clear, the provision at issue was intended to apply to more than claims for breach of the agreement. Here, the fact that the jury did not have the residence agreement before it was irrelevant, as neither party disputed that the residence agreement was entered into mutually, and a breach of the agreement was not at issue. The only remaining dispute was as to the meaning of the agreement's terms. Resolution of this dispute fell to the court, as matters of contract interpretation are questions of law.

[21] Furthermore, in petitioning the trial court for attorney fees after the jury had reached its decision in this case, Storch was following standard procedure. *R.L. Turner Corp.*, 963 N.E.2d at 459-60. Our Supreme Court has noted that a petition for attorney fees presents an issue separate from the merits of a case because the inquiry cannot commence until a party has prevailed. *Id.* at 459 (citing *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451-52 (1982)). Accordingly, a request for attorney fees "almost by definition is not ripe for consideration until after the main event reaches an end," and "[e]ntertaining such petitions post-judgment is virtually the norm." *Id.* at 460. "[I]n some sense," a request for attorney fees is an equitable petition. *Id.*

[22] As to the amount of fees, this Court has recognized that there are instances where a jury may decide whether an amount of fees is reasonable, such as where the parties have stipulated to that effect or the contract calls for it. *Cavallo v. Allied Physicians of Michiana, LLC*, No. 71A05-1406-PL-285 at *9 (Ind. Ct. App. August 20, 2015). However, absent such agreements, parties do not have the right to have a jury determine a reasonable amount of fees. *Id.* As no such agreement exists in this case, we do not believe that any triable issue remains. *See E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 626-27 (7th Cir. 2000).

[23] In any event, Greentree has never argued that the jury should determine a reasonable award of fees and has always assumed that such a determination would be left to the trial court. *See* Appellant's App. p. 90-91. We have observed that "the trial judge is considered to be an expert on the question and may judicially know what constitutes a reasonable attorney's fee." *Longest ex rel. Longest v. Sledge*, 992 N.E.2d 221, 231 (Ind. Ct. App. 2013). We do not doubt that the trial court is capable of considering evidence on this issue and deciding what is reasonable in this case.

[24] The judgment of the trial court is reversed and remanded so that the trial court may calculate reasonable attorney fees and award those fees to Sindledecker's estate, as called for in the parties' residence agreement.

Bradford, J., and Pyle, J., concur.