**AMERICAN ARBITRATION ASSOCIATION and North Miami Education Association, Appellants–Defendants,**

v.

**NORTH MIAMI COMMUNITY SCHOOLS and Donald G. Davis, Appellees–Plaintiffs.**

No. 52A02–0608–CV–640.

Court of Appeals of Indiana.

May 14, 2007.

---

**17.** Text in brackets appears in original text.

Eric M. Hylton, James B. Chapman, II, Richard J. Darko, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorneys for Appellant.

Donald G. Fern, Fern, Grund & Grund, Peru, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

The North Miami Education Association ("Education Association") filed a grievance and a demand for arbitration against the North Miami School Corporation ("School Corporation") alleging that the terms of a severance agreement between the School Corporation and Donald G. Davis violated the terms of a collective bargaining agreement (the "Master Contract"). The School Corporation filed a lawsuit seeking injunctive and declaratory relief to prevent arbitration. The Education Association now appeals the trial court's entry of the preliminary injunction, contending that the School Corporation failed to establish its entitlement to such relief. Concluding that the trial court erred in granting the motion for a preliminary injunction because the Master Contract requires the arbitrator, and not the trial court, to first determine whether the grievance is arbitrable, we reverse.[1]

### Facts and Procedural History

The School Corporation is located in Miami County, Indiana. The Education Association is a teacher's organization located in Denver, Indiana, and is the exclusive bargaining representative for all licensed contractual employees of North Miami Community Schools.

On or about January 20, 2003, the School Corporation and the Education Association entered into the Master Contract, in effect from January 20, 2003, through August 31, 2005, that excluded from its terms, among others, employees classified as principals. The Master Contract provides for binding arbitration of grievances, and specifically states: "If any question

arises to arbitrability, such questions will first be ruled upon [by] the arbitrator." Appellant's App. at 29.

Prior to January 27, 2003, Davis was employed by the School Corporation as principal of North Miami Elementary School. On January 27, 2003, the School Corporation and Davis entered into a severance agreement. Pursuant to the agreement, Davis was to be reassigned as a teacher for the 2003–04 school year. In addition, the agreement provided the following insurance and retirement benefits to Davis:

a. an annual $4,000.00 annuity payment from the School Corporation to Davis for the remaining 5 years prior to the principal reaching age 58;

b. provision of health insurance benefits to Davis at the cost of $1.00 per year to Davis until he is eligible for Social Security and Medicare.

*Id.* at 73. At the end of the 2002–03 school year, on June 30, 2003, Davis resigned his position as principal. On August 18, 2003, he entered into a teaching contract.

On October 12, 2005, the Education Association filed a grievance and demand for arbitration. The Education Association's grievance alleges the School Corporation violated the Master Contract by providing for the additional retirement and insurance benefits to Davis once he became a teacher and re-entered the bargaining unit.

The School Corporation filed a motion to dismiss with the American Arbitration Association and also filed a lawsuit seeking injunctive and declaratory relief to prevent arbitration. The School Corporation requested that the Education Association be enjoined from continuing its activities un-

1. We heard oral argument in this case on April 11, 2006, at Ivy Tech in Lafayette, Indiana. We thank counsel for their advocacy and extend our appreciation to Ivy Tech for hosting the oral argument.

der the Master Contract as it pertains to Davis and his voluntary retirement as principal.

The Miami Circuit Court granted the School Corporation's request for preliminary injunction, enjoining the parties from participating in arbitration proceedings. The Education Association now appeals the trial court's entry of preliminary injunction, contending that the School Corporation failed to establish its entitlement to such relief. We address only the narrow question of whether the arbitrator, or the trial court, has the authority to decide if the grievance is arbitrable, and do not reach the merits of the Education Association's grievance.

### Discussion and Decision

### I. Standard of Review

 The decision whether to grant or deny a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether the trial court has clearly abused its discretion. *Central Indiana Podiatry, P.C. v. Krueger,* 859 N.E.2d 686, 691–92 (Ind.Ct.App.2007). When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. Ind. Trial Rule 52(A). When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. *Barlow v. Sipes,* 744 N.E.2d 1, 5 (Ind.Ct.App.2001), *trans. denied.* The trial court's judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.*

 The trial court's discretion to grant or deny a preliminary injunction is measured by several factors. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: 1) the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 2) the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action if the injunction does not issue; 3) the threatened injury to the plaintiff outweighs the potential harm to the defendant resulting from the granting of the injunction; and 4) the public interest would not be disserved. *Crossmann Cmtys., Inc. v. Dean,* 767 N.E.2d 1035, 1040 (Ind.Ct.App.2002). The movant must prove each of these requirements to obtain a preliminary injunction. *Planned Parenthood of Ind. v. Carter,* 854 N.E.2d 853, 863 (Ind.Ct.App.2006). If the movant fails to prove even one of these requirements, the trial court cannot grant an injunction. *Id.* The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Crossmann Cmtys.,* 767 N.E.2d at 1040.

### II. Agreement To Arbitrate

The trial court concluded that the School Corporation demonstrated a reasonable likelihood of success at trial. Specifically, the trial court found the evidence demonstrated that the issue was whether the severance agreement and its benefits were within the scope of the Master Contract. The court found that the Master Contract "contractually excludes the Principal from the Contract," and Davis was a principal at the time the severance agreement was signed. Appellant's App. at 11.

However, the issue for the trial court was not the enforceability of the severance agreement. Rather, the grievance is based on the Master Contract between the Education Association and the School Corporation. The Education Association's grievance is that the School Corporation violated provisions of the Master Contract. Thus, the trial court should have decided 1) whether the parties had an enforceable arbitration agreement, and, if so, 2) whether the disputed matter is the type of claim intended to be arbitrated under the agreement. *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind.Ct.App.2004); *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind.Ct.App.2001).

 Whether parties have "agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent." *Novotny v. Renewal By Andersen Corp.*, 861 N.E.2d 15, 20 (Ind.Ct.App.2007) (quoting *Precision Homes of Indiana v. Pickford*, 844 N.E.2d 126, 131 (Ind.Ct.App. 2006), *trans. denied.*).

[A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so. Where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute. In answering this question, the court decides whether the dispute, on its face, is covered by the language of the arbitration provision. Additionally, before a court compels arbitration, it must first resolve any claims concerning the validity of the contract containing the arbitration clause. Once satisfied that the parties contracted to submit their disputes to arbitration, the court is

required by statute to compel arbitration. Judicial inquiry is thus limited to the validity of the contract containing the arbitration clause, not the construction of that clause.

*Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind.Ct.App.1999) (citations omitted).[2]

 When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 598 (Ind.Ct.App.2003). In answering whether parties agreed to arbitrate a particular dispute, the court decides whether the dispute, on its face, is within the language of the arbitration provision. *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind.Ct.App.1995), *trans. denied*; *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1162 (Ind.Ct.App.1993). In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Mislenkov*, 743 N.E.2d at 289 (quoting *St. John Sanitary Dist.*, 621 N.E.2d at 1162).

 However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by constructions or implication. *Id.* The actual parameters of the arbitration obligation and the arbitrator's powers are drawn from an express agreement between the parties. *Fort Wayne Cmty. Schs. v. Fort Wayne Educ. Ass'n, Inc.*, 490 N.E.2d 337, 341 (Ind.Ct.App.1986). This

2. Indiana Code section 34–57–2–3(a) states that "[o]n application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."

principle gives the parties the freedom "to define for themselves what questions may be arbitrated." *Id.*

There is no dispute that the Master Contract contains an arbitration clause. The Education Association points to the "broad" provisions of the Master Contract. These provisions include the definition of a grievance:

 A grievance is a claim by a grievant that:

a. there has been a violation, misinterpretation, or misapplication of this contract, law, Board Policy or procedure, or;

b. he/she has been deprived of a professional advantage without just cause.

Appellant's App. at 28. Also, the Master Contract specifically provides:

D. Individual Teacher. Any individual contract or agreement between the Board and any individual teacher will be expressly subject to the terms and conditions of this Agreement or successor Agreement.

*Id.* The Master Contract gives the arbitrator the authority to resolve questions as to the arbitrability of a grievance. The Master Contract, in the section entitled "Step III–Binding Arbitration," states:

If any question arises to arbitrability, such questions will first be ruled upon [by] the arbitrator. Both parties agree that the decision of the arbitrator will be final and binding on all parties.

*Id.* at 29. Thus, the Master Contract contains a broad grievance arbitration provision to resolve disputes if an allegation has been made that "there has been a violation, misinterpretation, or misapplication of this contract, law, Board Policy or procedure." Thus, the parties had an enforceable arbitration agreement and freely defined for themselves that questions as to

arbitrability will first be ruled on by the arbitrator.

The School Corporation argues as the Master Contract clearly excludes principals, and Davis was not a part of the bargaining unit at the time of the severance agreement, the Education Association is not entitled to compel arbitration of the severance agreement. The School Corporation relies on *Angell Enter., Inc. v. Abram & Hawkins Excavating Co.*, 643 N.E.2d 362, 365 (Ind.Ct.App.1994) (group of subcontractors could not use an arbitration clause in contract between general contractor and owner to compel owner to submit claims against subcontractors to arbitration because subcontractors were not parties to the agreement). Further, the School Corporation states the claim is not the type of claim that the parties agreed to arbitrate. The severance agreement between the School Corporation and the principal is to be excluded from the Master Contract because principals are excluded from the Master Contract. Also, the issues of pay, health benefits and other employment benefits concerning principals are to be negotiated between the School Corporation and those individuals, since principals are not covered by the Master Contract.

However, the parties entered into the Master Contract that provides for arbitration of any grievance alleging a violation, misinterpretation, or misapplication of the Master Contract. The Education Association urges that after a determination of the existence of a valid contract containing an arbitration clause, a ruling by the trial court on the underlying dispute is an abuse of discretion, pursuant to *Goebel v. Blocks and Marbles Brand Toys, Inc.*, 568 N.E.2d 552 (Ind.Ct.App.1991) (holding that trial court "abused its discretion" when it ruled on contractual disputes after it had determined the existence of a valid con-

tract containing an arbitration clause, stating that issues arising after the formation of a contract and agreement to arbitrate are for the arbitrator's resolution).

The Education Association argues any particular dispute that a party believes is not within the scope of the contract must be specifically excepted from the arbitration provision's broad language, or must be submitted to arbitration, citing *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 100 (Ind.1994). In that case, PSI Energy and AMAX Coal agreed to arbitrate "any controversy, claim, counterclaim, defense, dispute, difference, or misunderstanding arising out of or relating to" the contract "[e]xcept as otherwise specifically provided for herein...." *Id.* at 97. A dispute arose regarding the interpretation of the gross inequities clause of the contract, and PSI sought to submit it to arbitration. The section of the contract addressing gross inequities did "not contain any language providing a means other than arbitration for the resolution of conflicting interpretations as to its meaning." *Id.* at 98. AMAX initiated a lawsuit to stay the arbitration. Although AMAX did not challenge the validity of its contract containing the arbitration clause, it maintained that the particular dispute was not arbitrable and sought a judicial determination to that effect. AMAX asserted that questions of arbitrability are for the court to determine, not an arbitrator. AMAX argued that the existence of a valid agreement to arbitrate was a threshold question for judicial determination. On appeal, the Indiana Supreme Court held: "More particular to this case, when a valid contract contains a broad arbitration clause, resolution of disputes about various other clauses should be through arbitration." *Id.* (footnote omitted). Similarly, in this case, a valid contract exists containing a broad arbitration clause.

█ We conclude that the School Corporation has failed to demonstrate a reasonable likelihood of success on the merits. The grievance filed by the Education Association alleges a violation of the Master Contract by the School Corporation. The grievance does not raise issues of pay, health benefits and other employment benefits to principals generally, which would clearly be excluded from arbitration. Rather, the grievance raises the specific issue of whether the School Corporation violated the provisions of the Master Contract by paying certain benefits to Davis, who is now a member of the bargaining unit. We do not today address the merits of this specific grievance. The terms of the Master Contract require the arbitrator to first rule on the question of arbitrability of the grievance.

The parties specifically entered into the Master Contract and its broad arbitration provision. Absent the specific language in the Master Contract, this court might come to a different conclusion. However, any question about the arbitrability of the grievance filed in this case is subject to arbitration pursuant to the terms of the Master Contract. The Master Contract provides for binding arbitration of grievances and states that any question arising to arbitrability will first be ruled on by the arbitrator. Thus, the Master Contract's broad arbitration clause clearly sets forth an intention to resolve all claims and disputes by arbitration. The trial court therefore abused its discretion in issuing the preliminary injunction.

### Conclusion

The trial court erred in preliminarily enjoining the arbitration proceedings. The Master Contract, with its enforceable arbitration agreement, provides in clear terms that grievances are to be submitted to binding arbitration. Whether the grievance filed by the Education Association is

an arbitrable grievance is an issue for the arbitrator, not the trial court, to decide. The Master Contract unequivocally provides that the arbitrator resolves questions regarding the arbitrability of a grievance. Accordingly, we reverse the trial court and remand with instructions to dissolve the preliminary injunction, and to order the parties to participate in the arbitration proceedings before the American Arbitration Association pursuant to the terms of the contract.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.