# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**ERIC E. SNOUFFER**
Snouffer & Snouffer
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL D. BOBILYA**
**DANIEL J. HOLDEN**
Bobilya Law Group, LLC
Fort Wayne, Indiana



FILED

Oct 10 2013, 10:46 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT KUNTZ, KUNODU, INC.,<br>and B-K INTERESTS, LLC., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1301-PL-14 |
| | ) | |
| EVI, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Daniel G. Heath, Judge
Cause No. 02D01-1207-PL-226

**November 13, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Appellants Robert Kuntz, Kunodu, Inc., and B-K Interests, LLC (collectively, "Kuntz") appeal the trial court's issuance of a preliminary injunction and award of attorney fees in favor of EVI, LLC ("EVI"). Kuntz raises the following issues for our review: (1) whether the trial court erred in granting a preliminary injunction prohibiting Kuntz from competing against EVI; (2) whether the trial court improperly modified the terms of the parties' covenant not to compete in conjunction with its grant of a preliminary injunction; (3) whether the trial court abused its discretion by awarding attorney fees to EVI; and (4) whether the trial court erred by entering a *nunc pro tunc* entry modifying its award of attorney fees for EVI.

We conclude that the trial court did not abuse its discretion by granting a preliminary injunction against Kuntz; however, the trial court improperly extended the duration of the parties' covenant not to compete. Further, we conclude that the trial court erred by awarding attorney fees to EVI at this stage of the proceedings. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History[1]

Kuntz had been in the business of selling, repairing, and rebuilding electric automobile parts, such as alternators and starters, since 1976. Beginning in 1991, Kuntz

---

[1] We heard oral argument in this case on October 22, 2013, at Purdue University. We commend counsel for their advocacy and thank the faculty, staff, and Executive MBA students at Purdue for their participation and hospitality.

owned and operated Kunodu, Inc. d/b/a Auto Electric ("Kunodu"), which was located at 709 East Washington Street in Fort Wayne, Indiana. In April of 2007, Kuntz sold the assets of Kunodu to JS Hare, Inc. ("JS Hare"). In connection with that asset sale, JS Hare and Kuntz, as an individual or through his solely owned company B-K Interests, LLC, entered into multiple contractual agreements. Those agreements included an asset purchase agreement, a covenant not to compete ("Noncompete Agreement"), a security agreement, a promissory note, and a lease agreement. The lease agreement ("the Lease") between Kuntz and JS Hare provided that JS Hare would lease the property at 709 East Washington for a five-year term and granted JS Hare an option to purchase the property at the expiration of the Lease.

On November 22, 2011, JS Hare entered into an agreement with EVI whereby EVI was authorized to manage all aspects of JS Hare's business. And on December 12, 2011, JS Hare sold its assets to EVI, including its goodwill and assets which JS Hare had acquired in the asset purchase from Kuntz. As part of that asset sale, JS Hare assigned its rights under the Lease and the Noncompete Agreement to EVI.

Sometime in late 2011, Kuntz became aware that EVI was managing JS Hare and doing business at 709 East Washington. Between late 2011 and early 2012, Kuntz had multiple conversations with EVI during which the parties attempted to negotiate an extension of the Lease or sale of the property to EVI. However, these negotiations were unsuccessful, and the Lease expired, according to its terms, on March 31, 2012.

3

Although Kuntz knew that EVI had been managing JS Hare, he was not aware of the asset sale between JS Hare and EVI until March or April of 2012.[2]

At some time prior to April 30, 2012, EVI became concerned that Kuntz had been engaged in certain activities in violation of the Noncompete Agreement and sent a letter to Kuntz voicing those concerns. On July 18, 2012, EVI filed suit against Kuntz and requested a preliminary injunction. The trial court held a hearing on the request for preliminary injunction on October 18, October 30, and November 7, 2012. On December 17, 2012, the trial court entered its findings of fact and conclusions of law and issued an order granting EVI's request for preliminary injunction and entered a judgment for attorney fees against Kuntz. On January 3, 2013, the trial court amended its judgment for attorney fees *nunc pro tunc*, increasing the award from $11,351.50 to $34,808. Kuntz now appeals. Additional facts will be provided below.

Discussion and Decision

I. The Preliminary Injunction

Kuntz's primary contention on appeal is that the trial court erred by granting EVI's request for a preliminary injunction. For the reasons discussed below, we conclude that the trial court did not abuse its discretion by granting the preliminary injunction against Kuntz.

---

[2] At this point, the facts are unclear as to when exactly Kuntz learned of the asset sale between JS Hare and EVI. Kuntz's brief indicates that he knew of the asset sale in "March or April, 2012," Appellant's Brief at 3, and EVI states that Kuntz was "officially made aware" in April of 2012. Appellee's Brief at 4. The trial court's findings of fact do not state the time at which Kuntz first had knowledge of the asset sale.

A. Standard of Review

The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and our review of that decision is limited to whether there was a clear abuse of discretion. Apple Glen Crossing, LLC v. Trademark Retail, Inc., 784 N.E.2d 484, 487 (Ind. 2003). When granting or refusing to grant a preliminary injunction, the trial court must make special findings of fact and conclusions of law. Ind. Trial Rule 52(A)(1). The reviewing court determines whether the findings support the judgment. Am. Arbitration Ass'n v. N. Miami Cmty. Schs., 866 N.E.2d 296, 300 (Ind. Ct. App. 2007). The trial court's findings or judgment will be reversed only if they are clearly erroneous. Id. A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. Id.

To obtain a preliminary injunction, the moving party must show by a preponderance of the evidence: (1) a reasonable likelihood of success on the merits by establishing a prima facie case, (2) remedies at law are inadequate, resulting in irreparable harm pending resolution of the substantive action if a preliminary injunction is not granted, (3) the balance of harms favors preliminary injunction such that the threatened injury to the movant outweighs the injunction's potential harm to the nonmovant, and (4) the public interest would not be disserved. Apple Glen Crossing, 784 N.E.2d at 487-88.

5

## B. Kuntz's Breach of the Noncompete Agreement

The trial court's issuance of the preliminary injunction was founded upon its determination that EVI demonstrated a prima facie case that Kuntz was in violation of the Noncompete Agreement. The Noncompete Agreement states in pertinent part:

> For purposes of this Agreement, "Non-compete Period" shall mean the period that begins on the effective date of this Agreement and ends on October 7, 2014, except that the "Non-Compete Period" shall be extended by the duration of any violation by [Kuntz] of the terms of Paragraph 2 of this Agreement.
>
> ***
>
> Noncompetition and Nonsolicitation. [Kuntz] will not at any time, directly or indirectly, on [his] own behalf or on behalf of any third party, whether as an agent, employee, employer, officer, director, shareholder, member, consultant, independent contractor, lender, investor, creditor, partner, principal or in any other competitive capacity:
>
> (a) Employ or seek to employ any person who was an employee of the Buyer during the Non-compete Period; or
>
> ***
>
> (c) "compete" (as hereinafter defined) with Buyer within the Market Area during the Non-compete Period . . . .
>
> ***
>
> For purposes of this Agreement, "compete," "competes," and "competing" shall mean to engage or seek to engage in activities or the provision of products or services in the Market Area that are identical or substantially similar to those activities engaged in or products or services provided by the Seller during the Service Period including, without limitation, the sale, rebuilding, refurbishing, and distribution of automotive starter [sic], alternators, and batteries. For the purpose of this Agreement, "competitor" shall mean any person, business or entity that "competes," as defined above. Seller and Kuntz acknowledge that Seller is selling to Buyer the goodwill of a business and make the preceding covenants in consideration

6

for and as a necessary condition of that transaction and for other good and valuable consideration received or to be received by them.

Appellant's Appendix at 193-94.

At the hearing, EVI presented evidence of Kuntz's breach of the Noncompete Agreement. Specifically, the trial court found that Kuntz engaged in activities prohibited by the Noncompete Agreement on at least thirty separate occasions during the noncompetition period and that he had personally repaired or rebuilt starters or alternators for persons whom he considered friends on at least a half-dozen occasions. Further, the trial court found that there was evidence to support the position that Kuntz violated the terms of the Noncompete Agreement by leasing the 709 East Washington Street property to a competitor of EVI, after EVI vacated the premises on March 31, 2012. The evidence contained in the record supports these findings, which are sufficient to constitute a prima facie showing that Kuntz acted contrary to the Noncompete Agreement.[3] However, Kuntz maintains that the trial court's findings as to his violation of the Noncompete Agreement are clearly erroneous or the result of an improper interpretation and application of the Noncompete Agreement.[4] We disagree.

---

[3] Additionally, the trial court found that Kuntz violated the Noncompete Agreement by employing a former employee of JS Hare and by using a commercial account to purchase automotive parts from a wholesale vendor and provide those parts to other people.

[4] Kuntz also argues that certain findings made by the trial court were impermissibly based upon hearsay testimony, which was admitted by the trial court over Kuntz's objection. The trial court admitted the testimony on the grounds that the declarant was the person testifying at the hearing. Although this evidence was unnecessary to make EVI's prima facie showing, we note for the benefit of the parties and the trial court that the availability of the declarant as a testifying witness does not in and of itself exempt his out-of-court statements from the rule barring hearsay. See K.F. v. State, 961 N.E.2d 501, 513-15 (Ind. Ct. App. 2012), trans. denied; see also Ind. Evidence Rule 801 & 803; Modesitt v. State, 578 N.E.2d 649, 652-54 (Ind. 1991).

First, Kuntz claims that because the Noncompete Agreement was between Kuntz and JS Hare, competition with EVI could not constitute a violation of the agreement. Essentially, Kuntz argues that the term "Buyer" in the agreement is defined as JS Hare and does not include the successors or assigns of JS Hare, and therefore, the Noncompete Agreement cannot be enforced by EVI. We find this argument unavailing. Section 10 of the Noncompete Agreement provides: "All the terms, covenants and conditions of this Agreement shall be binding upon, and inure to the benefit of, and be enforceable by the parties hereto and their respective successors, heirs, personal representatives, executors and assigns." Appellant's App. at 195. This provision clearly demonstrates that the parties to the agreement, including Kuntz, anticipated the possibility that the contract may be assigned. Indeed, JS Hare's rights under the agreement were assigned to EVI after EVI purchased assets from JS Hare.[5] Therefore, EVI may enforce the Noncompete Agreement against Kuntz.

Second, Kuntz argues that the trial court erred by finding that Kuntz's lease agreement with a competitor of EVI's violates the Noncompete Agreement. Particularly, Kuntz takes issue with the trial court's determination that his role as a lessor amounts to him competing as a "creditor" under the terms of the agreement. Kuntz cites Wineteer v. Kite, 397 S.W.2d 752 (Mo. Ct. App. 1965), for the proposition that leasing to a competitor is not a violation of a covenant not to compete absent an express provision

---

[5] As a general matter, Indiana common law allows for the assignment of contractual rights absent an expression of contrary intent by the parties. See Chrysler Fin. Co., LLC v. Indiana Dep't of State Revenue, 761 N.E2.d 909, 912 (Ind. T.C. 2002). The Noncompete Agreement does not countenance any clear intent to avoid assignment. Further, Kuntz does not argue that the contract was not—or could not be—validly assigned and thus has forfeited that issue.

8

restricting such leasing. We note first that Wineteer is not binding and acts only as persuasive authority for this court. That said, we believe that Kuntz reads the Wineteer decision too broadly, and it can be distinguished from this case. In Wineteer, the court dealt with a non-competition provision stating that the parties "agree[d] not to compete directly or indirectly." Id. at 754. The court noted that the parties made no effort to amplify the provision and that the brevity of the provision rendered it only a generalized restriction. Id. at 755. In the absence of evidence that the parties had considered a more expansive application of their agreement, the court declined to extend it to prevent leasing to a competitor. Id. By contrast, the Noncompete Agreement at issue here contains a nearly exhaustive list of roles in which Kuntz is prohibited from acting as a competitor: "Seller and Kuntz will not at any time [compete], directly or indirectly, on their own behalf or on behalf of any third party, whether as an agent, employee, employer, officer, director, shareholder, member, consultant, independent contractor, lender, investor, creditor, partner, principal or in any other competitive capacity[.]" Appellant's App. at 193. Considering the broad scope of this provision and the inclusion of language prohibiting competition "in any other competitive capacity," it is apparent that the intent and legal effect of the provision is to restrict all competitive activity in any capacity. We believe that Kuntz's role as lessor for a competitor of EVI is prohibited competition under the terms of the Noncompete Agreement.[6]

---

[6] We emphasize that our determination that the Noncompete Agreement prohibits leasing to a competitor is based on the overall scope and language of the agreement, rather than the singular restriction that Kuntz refrain from competing as a "creditor."

9

In addition to establishing a reasonable likelihood of success on the merits, the remaining requirements for a preliminary injunction have also been met, and Kuntz does not specifically challenge the court's determination on the remaining elements. With respect to a showing of irreparable harm, the parties agreed that a breach of the Noncompete Agreement "would cause irreparable harm to the Buyer, and that such damage would be incapable of precise measurement, that no adequate remedy at law would exist for such breach . . . ." Appellant's App. at 194. Although such an agreement is not dispositive, it is persuasive in determining that a preliminary injunction is appropriate. Moreover, EVI directs us to a number of decisions in which this court has found injunctive relief as an appropriate remedy for violation of a covenant not to compete. See, e.g., Robert's Hair Designers, Inc. v. Pearson, 780 N.E.2d 858, 870 (Ind. Ct. App. 2002); Norlund v. Faust, 675 N.E.2d 1142, 1149-50 (Ind. Ct. App. 1997), trans. denied. Regarding the balance of harms, the court did not abuse its discretion by concluding that the harm to EVI of continued violation of the Noncompete Agreement by Kuntz outweighs any potential harm to Kuntz by issuing a preliminary injunction. And, lastly, we agree that the public interest is not disserved by the issuance of a preliminary injunction under these circumstances.

In sum, we conclude that the trial court did not abuse its discretion by granting EVI's request for preliminary injunction.

## C. Pre-existing Breach

Kuntz contends that even if his conduct would have constituted a breach of the Noncompete Agreement, he was no longer bound to that agreement due to pre-existing breaches by JS Hare. Kuntz maintains that several pre-existing breaches occurred, including defaults under both the security agreement and the Lease.[7] In response, EVI maintains that Kuntz failed to properly plead an affirmative defense, and even if he had preserved the defense of pre-existing breach, Kuntz failed to prove default or waived any claim of previous default by failing to enforce his rights under the agreements.

First, we address EVI's contention that Kuntz failed to properly plead an affirmative defense regarding pre-existing breach by JS Hare or EVI. We recognize the trial court's findings indicate that it, too, believed that arguments concerning pre-existing defaults were not properly before the court. We disagree. Kuntz's Answer to Plaintiff's Complaint, Affirmative Defenses, and Counterclaims ("Kuntz's Answer") states in Paragraph 11 of the Counterclaims section:

> Even if EVI was a party to the Non-Compete Agreement or had other rights to enforce same, neither Kunodu nor Kuntz are bound by the restrictions in the Non-Compete Agreement as JS Hare is and has been in default of the Asset Purchase Agreement . . . since at least December 12, 2011. Under the plain language of the Non-Compete Agreement, the restrictive terms are not enforceable in the event of a default.

Appellant's App. at 135. Indiana Trial Rule 8(C) states that "[i]f the pleading mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court shall treat

---

[7] Alleged defaults of the security agreement include assigning, moving, and selling collateral without Kuntz's written consent and failing to keep the collateral in good repair. Alleged defaults of the Lease include assigning the Lease without Kuntz's written consent, surrendering the property in poor condition, and failing to pay real estate taxes called for under the Lease.

the pleading as if there had been a proper designation." Thus, the fact that Kuntz asserted a prior default by JS Hare as a counterclaim, rather than a defense, is of no great import. We believe Kuntz's Answer is sufficient to satisfy the requirements of notice pleading and preservation of an affirmative defense, Lafary v. Lafary, 476 N.E.2d 155, 158-59 (Ind. Ct. App. 1985), and to allow Kuntz to defend on a theory of pre-existing breach.[8] See Ind. Trial Rule 8(F) ("All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points."). To the extent the trial court's findings and judgment sought to preclude Kuntz from presenting an affirmative defense concerning prior default by JS Hare, we find that determination to be clearly erroneous.

Although we conclude that Kuntz has preserved his affirmative defense, we do not believe that those arguments, at this juncture, are sufficient to render the trial court's preliminary injunction an abuse of discretion. EVI need only show a reasonable likelihood of success by establishing a prima facie case. Apple Glen Crossing, 784 N.E.2d at 488. EVI has made this showing, and the facts necessary to determine whether

---

[8] Ironically, Kuntz points out that EVI failed to plead waiver as an affirmative defense in its Answer to Counterclaims and contends that EVI should be precluded from arguing Kuntz either waived or is estopped from making any claim of pre-existing default by JS Hare. Waiver and estoppel are affirmative defenses. Ind. Trial Rule 8(C). Ordinarily, an affirmative defense is waived if not specifically pled in the answer or raised at trial. Nelson v. Gurley, 673 N.E.2d 497, 500 n.3 (Ind. Ct. App. 1996). Here, evidence relating to these arguments was presented by EVI without objection, and the trial court considered the arguments in its findings. Therefore, EVI's arguments as to waiver and estoppel have not been forfeited. See Ind. Trial Rule 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); Warner v. Riddell Nat'l Bank, 482 N.E.2d 772, 776 (Ind. Ct. App. 1985), trans. denied. Moreover, we do not believe that Kuntz will suffer any unfair prejudice by allowing EVI to continue to argue waiver or estoppel going forward.

JS Hare previously defaulted and whether Kuntz waived any prior default are unclear, undeveloped, and disputed among the parties.

Preliminary injunctions protect the rights of the parties by "maintaining the status quo as it existed prior to the controversy, until the issues and equities in a case can be determined after a full examination and hearing" and "prevents harm to the moving party that could not be corrected by a final judgment." AGS Capital Corp., Inc. v. Prod. Action Int'l, LLC, 884 N.E.2d 294, 314 (Ind. Ct. App. 2008), trans. denied. We believe that these goals are best achieved in this case by maintaining the preliminary injunction until the issues of pre-existing default and waiver are fully developed and vetted in the first instance by the trial court.

It is important to note that our analysis at the preliminary injunction stage is confined to the question of whether there has been a prima facie showing and the moving party has demonstrated a reasonable likelihood of success on the merits. This has been done, so our inquiry is at its end. Neither our decision nor the trial court's issuance of a preliminary injunction is an indicator of which party is entitled to ultimate success on the merits. It remains to be seen whether the scales may be tipped by the parties' additional arguments regarding default, waiver, and estoppel.

## II. Extension of Time Period in Covenant Not to Compete

Kuntz contends that the trial court erred by entering a judgment "modify[ing] the terms of the Non-Compete Agreement at the preliminary injunction stage." Appellant's Brief at 24. He asserts that the trial court's determination subverts the purpose of the

13

preliminary injunction, which is merely to maintain the status quo until the case can be heard and decided on the merits.

In fact, the trial court concluded "[Kuntz's] violations of the Non-compete commenced on approximately at [sic] the beginning of April, 2012, until the date of this Order enjoining [Kuntz] from violating the Non-compete, or about eight (8) months. The Non-compete is, hereby, extended from October 7, 2014, until June 7, 2015." Appellant's App. at 44. The trial court's conclusion is based upon a provision of the Noncompete Agreement, which provides that its restrictions "shall be extended by the duration of any violation by [Kuntz] of the terms of Paragraph 2 of this Agreement." Appellant's App. at 193.

We disagree with Kuntz's characterization of the trial court's judgment as a "modification" of the Noncompete Agreement, because the agreement itself already contemplates an extension of the agreement for the term of any violation. That said, we understand Kuntz's concern, as the trial court's order granting preliminary injunction is neither a declaratory judgment nor a permanent injunction occurring as a final disposition on the merits. The purpose of a preliminary injunction is to "preserve the *status quo* as it existed before a controversy, pending a full determination on the merits of the dispute." Stoffel v. Daniels, 908 N.E.2d 1260, 1272 (Ind. Ct. App. 2009). The status quo is the "last, actual, peaceful and non-contested status which preceded the pending controversy." N. Ind. Pub. Serv. Co. v. Dozier, 674 N.E.2d 977, 987 (Ind. Ct. App. 1996) (citation omitted). In our view, the last uncontested position of the parties was the Noncompete

Agreement as it existed prior to litigation; that is, the Noncompete Agreement was enforceable until October 7, 2014.

The trial court's conclusion that the period of the Noncompete Agreement should be extended beyond October 7, 2014 due to a violation by Kuntz is premature at this stage of the litigation and goes beyond the purpose of a preliminary injunction. Any court-ordered extension of the Noncompete Agreement would be appropriate only after a full examination of the case on the merits and a final determination that a violation occurred. Therefore, we conclude that the trial court abused its discretion by extending the duration of the Noncompete Agreement as part of the preliminary injunction.

### III. Attorney Fees after Preliminary Injunction

Finally, Kuntz argues that the trial court erred by awarding attorney fees to EVI in conjunction with its entry of the preliminary injunction. We agree.

Indiana follows the "American Rule," which requires that generally "a party must pay his own attorneys' fees absent an agreement between the parties, a statute, or other rule to the contrary." R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 458 (Ind. 2012). Here, there is an agreement between the parties regarding attorney fees. The Noncompete Agreement states: "In any action brought to enforce this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in that action or proceeding and in any appellate proceedings relating thereto from the other party or parties . . . ." Appellant's App. at 194 (emphasis added). A "prevailing party" is

[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. . . . To be such does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it.

BLACK'S LAW DICTIONARY 1188 (6th ed. 1990). A party prevails by "a judgment following a full trial of the merits or by consent decree or settlement that grants them the relief sought." AGS Capital Corp., 884 N.E.2d at 316. "Inherent in the definition of preliminary judgment is the fact that a judgment on the merits has yet to be made" and "the prevailing party is yet to be determined." Id.

EVI's attainment of a preliminary injunction marks only a success at one stage of the litigation and does not afford it prevailing party status. Therefore, we conclude that the trial court erred by awarding attorney fees to EVI after entry of the preliminary injunction.[9]

## Conclusion

We conclude that the trial court's decision to grant a preliminary injunction against Kuntz was not an abuse of discretion; however, the trial court improperly extended the duration of the Noncompete Agreement. Further, we conclude that the trial court erred by awarding attorney fees to EVI upon entry of the preliminary injunction. Accordingly, we affirm in part, reverse in part, and remand for further proceedings

---

[9] Because we conclude that the trial court's award of attorney fees was inappropriate, we need not address the issue of whether the trial court erred by entering a *nunc pro tunc* entry modifying its award of attorney fees for EVI.

16

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and RILEY, J., concur.