## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2017, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James D. Johnson
Spencer Tanner
Jackson Kelly PLLC
Evansville, Indiana

Raymond T. Seach
Riley Bennett Egloff LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Reed S. Schmitt
Bingham Greenebaum Doll LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nirmal Joshi, M.D.,

*Appellant-Defendant,*

v.

Apollo Medical Group, LLC,

*Appellee-Plaintiff*

———————————

Nirmal Joshi, M.D.,

*Third-Party Plaintiff*

v.

October 5, 2017

Court of Appeals Case No.
82A01-1612-CT-2842

Appeal from the Vanderburgh
Superior Court, Indiana
Commercial Court

The Honorable Richard G.
D'Amour, Judge

Trial Court Cause No.
82D07-1611-CT-5833

Ayman Elfar, M.D. and
Candido Guiao, M.D.,

*Third-Party Defendants*

**Baker, Judge.**

Dr. Nirmal Joshi is a member-manager of Apollo Medical Group, LLC (Apollo). After Dr. Joshi began allegedly undermining Apollo's relationships with current clients, usurping future business opportunities, directing Apollo's emails to his own personal address, keeping Apollo's physical mail from the other member-managers, and taking Apollo's website down and refusing to put it back up, Apollo filed a complaint and sought a temporary restraining order and preliminary injunction against Dr. Joshi. The trial court granted a preliminary injunction. Dr. Joshi now appeals that order, arguing, among other things, that a provision in Apollo's operating agreement that permitted the member-managers to compete with the company sanctioned his conduct in this case. We disagree, find no errors with respect to the trial court's order, and affirm.

# Facts

Apollo was formed on June 7, 2013, as an Indiana member-managed limited liability company (LLC) to provide anesthesia staffing services to hospitals and surgical centers around the country. The company has three member-managers: Drs. Joshi, Ayman Elfar, and Candido Guiao. Each physician owns a one-third interest in Apollo. During the relevant period of time, Drs. Elfar, Joshi, and Guiao were also practicing anesthesiologists at Deaconess Hospital in Evansville.

Apollo operates under an Amended and Restated Operating Agreement (the Operating Agreement), which has an effective date of January 1, 2016. Pursuant to the Operating Agreement, the "business and affairs of the Company shall be managed by its Members."[1] Appellant's App. Vol. II p. 56. Each manager was required to "exercise business judgment in participating in the management of the business operations and affairs of the Company." *Id.* at 57.

The Operating Agreement further specifies that the member-managers "shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture, whether or not competitive,

---

[1] The Operating Agreement distinguishes between "Managers" and "Members," though each of the three doctors in this case qualify as both. A "Manager" "means the one or more managers elected by the Members pursuant to this Operating Agreement . . . but initially means [Drs. Elfar, Joshi, and Guiao], who shall have the title of Managing Partners." Appellant's App. Vol. II p. 53. "'Member' means each of the Initial Members, Additional Members and Substituted Members who are, at any relevant time, a Member of the Company." *Id.* at 54.

disclosed or undisclosed." *Id.* The member-managers were permitted to have other employment: "A Manager shall not be required to have the management of the Company as his or her sole and exclusive function, and may have other business interests and may engage in other activities in addition to those relating to the Company." *Id.*

In the months leading up to the lawsuit, Apollo had service contracts with four surgical centers: Kissing Camels Surgery Center (Kissing Camels) in Colorado; Kentuckiana Medical Center (KMC) in Indiana; Riverview Surgery Center (Riverview) in Indiana; and SurgeCenter of Louisville in Kentucky. Apollo also had contracts with Bolder Anesthesia Management (Bolder), which provides managerial and administrative services to Apollo, including assistance in the recruitment of anesthesiologists, staff scheduling, billing, and collections.

In 2016, Drs. Elfar, Joshi, and Guiao partnered with Gary Pilibosian to form a separate entity called AMG Management Services, LLC (AMG). AMG was formed to provide management, administrative, and other non-physician services to Apollo's clients. Each of AMG's four members owns a one-quarter interest in and is a member-manager of AMG.

Dr. Joshi did not want Pilibosian to share in AMG's business but could not convince either Dr. Elfar or Dr. Guiao to cut him out. In September 2016, Dr. Joshi told Drs. Elfar and Guiao that he intended to divert business away from AMG in an attempt to limit Pilibosian's financial benefit and that if the other members did not agree with him, he would funnel any new business to a new

company and that "Apollo would be dead." *Id.* at 103. Drs. Elfar and Guiao objected to the plan and told Dr. Joshi that they would not participate in a scheme to cheat Pilibosian.

[8] Unbeknownst to Apollo, Dr. Joshi then began to actively undermine Apollo's business. He contacted KMC and Kissing Camels and misrepresented Apollo's current status, telling them that he had been removed as a manager of Apollo. He also told Kissing Camels that Apollo had licensure issues in Colorado that could harm Kissing Camels, which was untrue. As a result of Dr. Joshi's interactions with KMC and Kissing Camels, both entities terminated their contracts with Apollo in October 2016. Around this time, Drs. Guiao and Elfar learned that Dr. Joshi had also reached out to Riverview, telling it that Apollo was breaking up, that it should make contingency plans for anesthesia services, and that it could move its business to Dr. Joshi if it wanted to. Dr. Joshi also told Drs. Guiao and Elfar that he has withheld at least one request for proposal sent to Apollo by a prospective client for his own purposes.

[9] Around this same time, Dr. Joshi also hijacked Apollo's mail, emails, and website. Beginning in September 2016, Dr. Joshi diverted communications from the company's website server to his own personal server, eventually taking the website offline. He also directed Apollo's emails to be sent to his personal email address. Apollo's counsel demanded that Dr. Joshi restore Apollo's

website and allow it access to its email; Dr. Joshi refused to do so.[2] Dr. Joshi also prevented Apollo from accessing its mail, which is sent to a private mailbox to which only he had access. He refused Apollo's demands for access to its mailbox.

[10] In October 2016, counsel for Apollo wrote a letter to the three member-managers, stating that, notwithstanding the right to compete provided by the Operating Agreement, member-managers "owe a duty of loyalty and fidelity and truthfulness" to one another and that, at the least, the member-managers could not compete with Apollo without first disclosing such an intent. *Id.* at 119-20. If the member-manager did intend to compete with Apollo and disclosed that intent to the other member-managers, that person would have to "go a separate way." *Id.* at 122.

[11] On October 19, 2016, Dr. Joshi's counsel sent a letter to counsel for Apollo, stating that Dr. Joshi "has an unfettered right to engage in activities that are competitive with Apollo, a right which he intends to exercise. If Apollo or any of its Members disagrees with this analysis, please notify me immediately." Appellant's App. Vol. III p. 38. On October 20, 2016, counsel for Drs. Elfar and Guiao sent a letter to Dr. Joshi's counsel, making it clear that they did not believe Dr. Joshi had a right to coopt Apollo's business for himself:

---

[2] According to the trial court, Dr. Joshi finally gave Apollo the necessary information to render Apollo's email and website accessible again after the November 23, 2016, hearing in this matter. Appealed Order p. 5.

Dr. Joshi has no such right to compete and Apollo will not memorialize any such agreement. Both Apollo and AMG are member-operated LLCs. . . . There is no provision in the Apollo Operating Agreement that allows a Member to compete against other Members for Apollo's business. In Mr. Wallace's letter, he correctly noted that all of the Members of Apollo and AMG have a fiduciary duty to each other. This duty includes the duty of loyalty, duty of honesty, and the duty of good faith. The agreement specifically provides that a manager must "exercise business judgment in participating in the management of the business operations and affairs of the Company."

*Id.* at 16-17.

In addition to sending the letter to Dr. Joshi, Drs. Elfar and Guiao took other steps to protect Apollo's business interests. They notified Bolder that all communications regarding Apollo's management should go through them. They also caused Apollo to pass a corporate resolution removing Dr. Joshi as a signatory on Apollo's bank account and requiring that he have the consent of another member-manager to solicit prospective clients for or on behalf of Apollo and to transact any business with existing clients or employees of Apollo.

These efforts failed to deter Dr. Joshi from the path he was on. Consequently, on November 18, 2016, Apollo filed a complaint[3] and a motion for a temporary

---

[3] The complaint includes nine counts against Dr. Joshi, including breach of fiduciary duty, conversion, breach of contract, intentional interference with Apollo's existing and prospective clients, trade libel, and violations of the Indiana Computer Trespass Act.

restraining order and preliminary injunction against Dr. Joshi.[4] On November 23, 2016, the trial court held a two-hour oral argument on both the motion for a temporary restraining order and the motion for a preliminary injunction. On December 1, 2016, the trial court granted a preliminary injunction. In a detailed and thorough sixteen-page order, the trial court found as follows:

> 17. . . . Dr. Joshi has never affirmatively stated he does not plan to start a competing business. Nor has Dr. Joshi affirmatively stated that he did not solicit any of Apollo's current clients to send Apollo a notice of cancellation of their contract with Apollo in order that those clients would be available to be his clients when he starts his competing business. Nor has Dr. Joshi affirmatively stated that he has never withheld from the other members one or more requests for proposal sent to Apollo by prospective clients.

> 18. . . . [T]his Court must draw the reasonable inference that Dr. Joshi, while still a member-manager of Apollo, has actively sought to lure current and/or prospective clients away from Apollo for the purpose of diverting those clients to his own, soon-to-be, competing business.

Appealed Order p. 4-5. The trial court assumed for argument's sake that the Operating Agreement permitted Dr. Joshi to compete with Apollo, but nonetheless found his argument unpersuasive:

> . . . [T]here is a difference between "engaging in . . . other [competitive] business[es] or venture[s] . . ." and usurping

---

[4] Dr. Joshi filed a third-party complaint against Drs. Elfar and Guiao, but that pleading is not at issue in this appeal.

corporate opportunity from the current business, Apollo. In other words, a person can engage in other competitive business without "appropriat[ing] to his own use a business opportunity that in equity and fairness belongs to the corporation." *McLinden v. Coco*, 765 N.E.2d 606, 615 (Ind. Ct. App. 2002). . . . In this case, Dr. Joshi did not merely engage in a competitive business. Rather, while still a member-manager of Apollo, Dr. Joshi sought to keep prospective clients away from Apollo by withholding requests for proposal which rightfully belonged to Apollo. Furthermore, Dr. Joshi, while still a member-manager of Apollo, has actively sought to usurp Apollo's current clients. Again, contracts, including operating agreements, are to be interpreted to effectuate the intent of the parties and . . . it seems apparent to this Court that [the sections of the Operating Agreement related to competition] were intended to be "moonlighting" provisions, meaning the doctors could "moonlight" on their own time and keep their profits without being subjected to liability. . . . [T]his Court currently finds no evidence to support the proposition that these modifications were intended to allow a manager-member to withhold and usurp property from Apollo, including requests for proposals and client lists, in the name of (or under the guise of) "competition."

*Id.* at 11-12 (some internal citations omitted).

[14] The trial court granted Apollo's request for a preliminary injunction, ordering as follows: (1) Dr. Joshi must provide to Apollo originals of all emails and documents belonging to Apollo and/or relating to Apollo's business; (2) Dr. Joshi shall not interfere with operation of Apollo's website and email system; (3) Dr. Joshi may not access Apollo's bank accounts other than to carry out Apollo's ordinary course of business; (4) Dr. Joshi shall not communicate with any person or entity who is an Apollo customer other than to carry out Apollo's

ongoing business (and he may not suggest he is no longer involved with Apollo's business, suggest that the customer send business to him or his own business, or make derogatory statements about Apollo); (5) Dr. Joshi shall not disclose to third parties any confidential information of Apollo; and (6) Dr. Joshi shall provide Apollo with a duplicate key to Apollo's mailbox. Dr. Joshi now appeals.

# Discussion and Decision

## I. Standard of Review

[15] To obtain a preliminary injunction, the movant must show (1) a reasonable likelihood of success on the merits; (2) the remedies at law are inadequate and there will be irreparable harm during the pendency of the action; (3) the threatened injury to the movant from denying the motion outweighs the potential harm to the nonmovant from granting the motion; and (4) the public interest would not be disserved by granting the injunction. *E.g.*, *Hannum Wagle & Cline Eng'g, Inc. v. Am. Consulting, Inc.*, 64 N.E.3d 863, 873 (Ind. Ct. App. 2016).

[16] In reviewing a trial court's ruling on a motion for preliminary injunction, we must determine whether the evidence supports the trial court's factual findings and whether the findings support the judgment. *Id.* at 874. In considering the findings of fact, we must determine whether they were clearly erroneous; in other words, when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We will consider only the evidence favorable to

the judgment and all reasonable inferences to be drawn therefrom, and will neither reweigh the evidence nor reassess witness credibility. *Id.* We apply a de novo standard of review to the trial court's conclusions of law. *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 115 (Ind. Ct. App. 2004).

[17] In this case, the trial court held oral argument but did not hold an evidentiary hearing; Dr. Joshi argues that we should review the case de novo as the order was based on a paper record. We decline Dr. Joshi's invitation to apply a de novo standard of review to the trial court's order. He has not directed our attention to any case in which a de novo standard of review was applied to a trial court's preliminary injunction ruling; instead, prior cases are consistent in holding that we must apply a "limited and deferential appellate standard of review . . . to trial court rulings on motions for preliminary injunction." *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 801 (Ind. 2011). This is a highly contentious case involving hotly disputed facts, and we will not second-guess the trial court's preliminary resolution of these factual disputes. Dr. Joshi does not argue that there is *no* evidence supporting the trial court's factual findings; instead, he directs us to his own evidence establishing the contrary of the facts found by the trial court. We decline this request to reweigh the evidence as we review the trial court's order.

## II. Preliminary Injunction

[18] Dr. Joshi raises a number of arguments, which we consolidate and restate as follows: (1) the trial court erred by determining that Apollo established a

reasonable likelihood of success on the merits; (2) the trial court erred by finding that the threatened injury to Apollo outweighed the potential harm to Dr. Joshi; and (3) the trial court erred by finding that public interest would not be disserved by granting the preliminary injunction.

## A. Likelihood of Success on the Merits

[19] Dr. Joshi first argues that the trial court erred by finding that Apollo established a reasonable likelihood of success on the merits of its claims. He does not explicitly address each claim alleged by Apollo against him, instead focusing on the breach of fiduciary duty claim.

[20] Dr. Joshi relies on the provision in the Operating Agreement authorizing the member-managers to compete with Apollo, contending that this provision sanctioned his actions. As noted above, the Operating Agreement states that the member-managers "shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture, whether or not competitive, disclosed or undisclosed." Appellant's App. Vol. II p. 56. And the member-managers were permitted to have other employment: "A Manager shall not be required to have the management of the Company as his or her sole and exclusive function, and may have other business interests and may engage in other activities in addition to those relating to the Company." *Id.* Dr. Joshi contends that these provisions modified his common law fiduciary duties to the company.

[21]  As a general rule, "common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs." *Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 997 (Ind. Ct. App. 2006). These duties include an obligation to act "fairly, honestly, and openly" with the LLC. *Id.* at 999. LLC members and managers are, however, permitted to modify, negate, and/or limit their duties, including fiduciary duties, by drafting their operating agreement accordingly. Ind. Code § 23-18-4-4(a).

[22]  Dr. Joshi contends that the provisions of the Operating Agreement permitting competition and other business interests negated his common law fiduciary duties to Apollo. We disagree. While it is true that LLC members and managers may modify or negate their fiduciary duties, we can only conclude that those duties are so fundamental and paramount to the smooth operation of companies that any modification or negation of fiduciary duties must be explicit. Here, no such explicit modification or negation of Dr. Joshi's fiduciary duties to Apollo is included in the Operating Agreement.

[23]  But even if we accepted for argument's sake that the Operating Agreement did, in fact, modify Dr. Joshi's fiduciary duties, we agree with the trial court that it did not go so far as to sanction his conduct in this case. The Operating Agreement did permit him to have other business interests, but that permission does not extend to conduct that actively undermines the LLC. Moreover, the Operating Agreement also contains a provision requiring that the member-managers must "exercise business judgment in participating in the management of the business operations and affairs of the Company." *Id.* at 57. Therefore,

even when engaging in other business interests and competing with Apollo, Dr. Joshi is still explicitly required to exercise his business judgment with respect to Apollo's affairs.

[24] Additionally, the Operating Agreement permits "competition," but that term does not go as far as Dr. Joshi claims. "Competition" would arguably include the act of competing with Apollo for *new* business,[5] but we simply cannot conclude that it would include the act of undermining and sabotaging Apollo's *current* business relationships. And it would certainly not include a right to hijack Apollo's website, email, and mail. In other words, that Dr. Joshi is permitted to compete with Apollo and engage in other business interests does not mean that he is permitted "to withhold and usurp property from Apollo, including requests for proposals and client lists, in the name of (or under the guise of) 'competition.'" Appealed Order p. 12.

[25] In sum, we do not find that the Operating Agreement explicitly modified or negated Dr. Joshi's fiduciary duties to Apollo. But even if it did, the modification did not sanction his behavior in this case. The trial court found that Dr. Joshi committed the following acts: (1) he threatened the other member-managers that "Apollo would be dead" if they did not agree to cut Pilibosian out of AMG, *id.* at 3; (2) he solicited Kissing Camels and KMC to

---

[5] Even if competition for new business is permitted under the Operating Agreement, it would still have to be done fairly and openly. Therefore, Dr. Joshi's alleged action of withholding requests for proposal that rightfully belonged to Apollo would not be allowed.

cancel their contracts with Apollo; (3) he told Riverview that Apollo was breaking up and that it could move its business to his new business venture; (4) he refused to share Apollo's mail or email with the other member-managers; (5) he took Apollo's website offline and refused to assist in bringing it back online; and (6) he has "actively sought to lure current and/or prospective clients away from Apollo for the purpose of diverting those clients to his own, soon-to-be, competing business," *id.* at 5. We decline Dr. Joshi's invitation to reweigh the evidence or second-guess the trial court's factual findings, as there is substantial evidence in the record supporting them. The trial court did not err by concluding that under these facts, Apollo is reasonably likely to succeed on the merits of its claim for breach(es) of fiduciary duty.[6]

## B. Weighing of Harms

[26] Next, Dr. Joshi argues that the trial court erred by finding that greater harm would result to Apollo from the denial of injunctive relief than to Dr. Joshi were the injunctive relief improperly granted. Initially, we note that Dr. Joshi discusses the "equities" of the case as a general term and focuses on his contention that Drs. Elfar and Guiao were also competing with Apollo. This

---

[6] Dr. Joshi argues that the trial court erred by interpreting the Operating Agreement provisions at issue as moonlighting provisions. In affirming the trial court's conclusion that Apollo is reasonably likely to succeed on the merits of its claims, we have not relied on the trial court's framing of the provisions as moonlighting provisions.

argument misses the mark as it does not properly address the weighing of harms element of a preliminary injunction claim.

[27] The trial court found that the weighing of harms favored an injunction:

> 1. *Email access, mail access, and website functionality.*
>
> Apollo is greatly harmed by not having access to its email and/or mail, and is also greatly harmed by not having a functioning website. Conversely, the harm to Dr. Joshi in ordering him to share the email, mail, and to bring Apollo's (the company for which Dr. Joshi is currently a member-manager) website back online is extremely minimal. Therefore, the equities are clearly in favor of the injunction.
>
> 2. *Dr. Joshi's attempted usurpation of Apollo's current and prospective clients.*
>
> Dr. Joshi's attempted usurpation of Apollo's current and prospective clients has greatly devastated Apollo. In September 2016, Apollo had contracts with four clients to provide medical services. At the time of this Order, two of those clients who worked closely with Dr. Joshi had already given notice of termination to Apollo and it appears Apollo could potentially lose a third client. Conversely, Dr. Joshi is not greatly harmed by being enjoined to do what the law already requires. Therefore, the balance of the equities greatly favors the injunction.

Appealed Order p. 12 (italics original). Dr. Joshi does not direct us to any errors in the trial court's analysis on this point, and we find none. We agree

with the trial court that the weighing of harms favors Apollo and the granting of an injunction.

# C. Public Interest

[28] Dr. Joshi also argues that the trial court erroneously determined that the public interest is served by the injunction. First, Dr. Joshi argues that "the trial court should not be allowed to do one party's bidding, prior to adjudication on the merits." Appellant's Br. p. 29. As Apollo points out, however, this is precisely what preliminary injunctions are designed to do. In all cases, the grant or denial of a motion for preliminary injunction necessarily requires the trial court to determine which party is entitled to relief or, as cynically put by Dr. Joshi, do one party's bidding. This argument is unpersuasive.

[29] Second, Dr. Joshi argues that by granting the injunction, the trial court is curtailing the freedom of LLCs to modify fiduciary duties and that this course of action disserves the public interest. We disagree. As noted above, the trial court's ruling does not undercut the right of LLCs to modify the fiduciary duties of their members or managers. Instead, the trial court found that Dr. Joshi's conduct in this case went beyond the conduct sanctioned by the Operating Agreement, thereby potentially violating his duties to the company. As Apollo notes, the trial court's order "prohibit[ed] Dr. Joshi from converting Apollo's business records [] and . . . stopp[ed] him from diverting Apollo's current and prospective clients for himself." Appellee's Br. p. 36. We find that the trial

court did not err by concluding that prohibition of this conduct serves the public interest.

## D.  Remedy

Finally, Dr. Joshi argues that the remedies fashioned by the trial court's preliminary injunction order fail to preserve the status quo.  *See Hannum Wagle*, 64 N.E.3d at 883 (observing that the purpose of a preliminary injunction is to preserve the status quo as it existed before a controversy, pending a determination on the merits); *Kuntz v. EVI, LLC*, 999 N.E.2d 425, 432 (Ind. Ct. App. 2013) (noting that the "status quo" is the last, actual, peaceful, and non-contested status that preceded the pending controversy).

The portions of the order about which Dr. Joshi complains are the provisions requiring him to (1) refrain from communicating with any former, current, or future customer of Apollo except for the purpose of conducting Apollo's ongoing business interests; and (2) turn over to Apollo all originals of all emails and documents belonging to Apollo and/or relating to Apollo's business.  Dr. Joshi does not articulate how these two provisions of the order fail to maintain the status quo—meaning the status that preceded the pending controversy.

Before the pending controversy, Dr. Joshi was (presumably) not actively undermining Apollo's relationships with current clients or attempting to usurp future Apollo business.  Also, he had not diverted Apollo's email to himself or kept Apollo's physical mail away from the other member-managers.  Therefore, the trial court's order on these issues merely maintained the status quo as it

existed before the current controversy arose.  We find no error with respect to the remedies fashioned by the trial court.

[33]    The judgment of the trial court is affirmed.


Brown, J., and Pyle, J., concur.